Opinion issued April 24, 2014



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-13-00290-CR

———————————

**TIMOTHY LYNN TATE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

———————————

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Court Cause No. 12-15044**

———————————

## MEMORANDUM OPINION

Timothy Lynn Tate was charged by indictment with the felony offense of aggravated assault by causing serious bodily injury, with three enhancement paragraphs. TEX. PENAL CODE ANN. § 22.02(a)(1) (West 2011). A jury found Tate

guilty and assessed a punishment of 50 years' confinement. On appeal, Tate contends that the trial court erred in limiting his voir dire, expressing his opinion regarding evidentiary rulings, acting as an advocate for the State in the presence of the jury, and failing to submit the lesser-included offense of misdemeanor assault. We affirm.

## Background

On a Sunday in August 2012, Tate and his then-girlfriend, Stacy Baxter, drove to a convenience store in Port Arthur. According to Baxter's testimony at trial, Tate was upset with her because she had taken a pain pill that was prescribed for her broken leg, preventing him from selling it. Baxter stayed in the truck while Tate went into the store to buy beer. Inside the store, Tate had a confrontation with an acquaintance. Tate returned to the truck, angry, with several 22-ounce beer bottles, and when the truck would not start, he started to walk home.

Baxter was unable to walk due to the cast on her leg, and she began screaming and cursing about being left at the store with no way to get home. She smashed one of the beer bottles in the back of the truck, and Tate said "Oh, no. You are not going to treat my truck like that." He returned to the truck and hit Baxter in the face through the open passenger-side window with a full 22-ounce

2

beer bottle. Tate got back in the truck, was able to start it, and drove them to their apartment.

Baxter testified that after they arrived at their apartment, Tate dragged Baxter out of the truck by her hair, jumped on top of her, and started kicking and punching her head and body. She testified that she was in pain, "begging for [her] life," and "thought [Tate] was going to kill [her]." Because of the cast on her leg, Baxter was unable to run away. Eventually, Tate stopped beating Baxter and told her to go get cleaned up.

As Baxter tried to enter their apartment, Tate attacked her again and began "profusely hitting [her] in [her] head, shoulders, body, neck, [and] face." According to Baxter, the beating "felt like forever" and she was "begging" Tate the whole time to "just stop hitting me." Tate asked Baxter why he should stop hitting her, and she told him that it was because she had a child who cared if she lived or died. After this, Tate stopped beating her and again told her to go clean up.

Baxter told Tate that she was very badly hurt and begged him to take her to the hospital, but he told her that he was not going to let her leave the apartment until she had healed. Baxter did not have a phone and Tate took away her key. On Wednesday, three days after the assault, Tate agreed to drop Baxter off at the hospital after she promised him that she would get pain pills for him to sell.

3

Baxter testified that as a result of the assault, she sustained broken fingers, fractured ribs, and a partially collapsed lung. She testified that the beating was so severe that Tate knocked out one of her teeth, and chipped another. She also testified that she had bruises on her neck, arms, legs, chest and face and cuts and gashes on her face and head. Photographs of Baxter's injuries admitted at trial corroborated Baxter's testimony regarding the extent of her injuries. Her medical records were also admitted, and these showed at least four fractured ribs on her left side, a contusion on the left lower lateral chest wall, and a collapsed lung. After being discharged from the hospital, Baxter stayed with her sister for four months, because she was unable to move around well due to her injuries. At trial, over six months after the incident, she testified that her broken bones had still not healed and never would heal correctly, and that her dental problems also persisted.

After the jury found Tate guilty of aggravated assault, the State proceeded on one enhancement paragraph. The jury found the enhancement paragraph true and assessed punishment at 50 years' confinement.

## Voir Dire

In his first issue, Tate contends that the trial court abused its discretion and prevented him from intelligently exercising his peremptory strikes by prohibiting him from asking the venire members their opinion of the Federal National Defense

4

Authorization Act. In his bill of exception, Tate argued that he intended to ask whether they agreed with this law, which, according to him, permits indefinite detention without charges. Tate asserts that this line of questioning was "calculated to identify those panelists who would be in agreement with that law as being people that would be more lenient towards the State or the Government and therefore, . . . would have allowed me to more intelligently exercise my [peremptory] challenges against persons who . . . tend to identify with State authority . . . ."

## A. Standard of Review and Applicable Law

"The trial court has broad discretion over the process of selecting a jury." *Sells v. State*, 121 S.W.3d 748, 755 (Tex. Crim. App. 2003). "Without the trial court's ability to impose reasonable limits, voir dire could go on indefinitely." *Id.* "Thus, we leave to the trial court's discretion the propriety of a particular question and will not disturb the trial court's decision absent an abuse of discretion." *Id.*

A trial court abuses its discretion when it prohibits a proper question about a proper area of inquiry. *Id.* at 755–56. "A question is proper if it seeks to discover a juror's views on an issue applicable to the case." *Id.* at 756. "[A] trial judge may prohibit as improper a voir dire question that is so vague or broad in nature as to constitute a global fishing expedition." *Id.* (citing *Barajas v. State*, 93 S.W.3d 36,

39 (Tex. Crim. App. 2002)).  The party seeking to ask the question bears the burden of showing that the question was proper.  *See Williams v. State*, 964 S.W.2d 747, 752 (Tex.  App—Houston [14th Dist.] 1998, pet. ref'd).

## B. Analysis

In order to demonstrate that the trial court abused its discretion in refusing to permit Tate's counsel to ask questions regarding the NDAA, Tate must show that his proposed questions were "proper," meaning that they sought "to discover a juror's views on an issue applicable to the case."  *See Sells*, 121 S.W.3d at 755–56. Here, Tate's counsel sought to ask about the panel's views regarding indefinite detention under the NDAA, a federal law unrelated to the facts of this case (in which there has been no complaint that Tate was improperly detained).

Tate cites no authority, and we have found none, holding that inquiries regarding an unrelated federal law that the jury would not be required to consider or apply in their deliberations, but which are intended to reveal a panel member's general predisposition toward government, is a "proper" question for voir dire, as opposed to an impermissible "fishing expedition."  *Id.* at 756.  Accordingly, because Tate has not shown that his proposed questions were proper, we conclude that Tate has not shown that the trial court abused its discretion in sustaining the State's objection to the questions.  *See Morris v. State*, 940 S.W.2d 610, 613 (Tex.

6

Crim. App. 1996) (in capital murder case, question regarding parole ineligibility was not a proper question because parole is not matter for jury's consideration in capital murder trial, and thus question was not related to "an issue applicable to the case"); *Smith v. State*, 703 S.W.2d 641, 645 (Tex. Crim. App. 1985) (question for jurors "thoughts" on insanity defense was not a proper question because it was improperly broad, even though it related to the defense raised in the case).

We overrule Tate's first issue.

## Trial Court's Comments

In his second and third issues, Tate contends that the trial court (1) violated Article 38.05 of the Code of Criminal Procedure by expressing his opinion regarding evidentiary rulings in the presence of the jury and (2) acted as an advocate for the State in the presence of the jury, denying him a fair and impartial trial.

### A. Standard of Review and Applicable Law

Due process requires a neutral and detached judge. *Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006). A judge should not act as an advocate or adversary for any party. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Article 38.05 of the Texas Code of Criminal Procedure provides: "In ruling upon the admissibility of

7

evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case." TEX. CODE CRIM. PROC. ANN. art. 38.05 (West 1979). To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party. *Dockstader*, 233 S.W.3d at 108.

Ordinarily, a complaint regarding an improper judicial comment must be preserved at trial. *See* TEX. R. APP. P. 33.1; *Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013); *Jasper v. State*, 61 S.W.3d 413, 420–21 (Tex. Crim. App. 2001). When no objection is made, "remarks and conduct of the court may not be subsequently challenged unless they are fundamentally erroneous"—that is, the error creates egregious harm. *See Powell v. State*, 252 S.W.3d 742, 744 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Moreno v. State*, 900 S.W.2d 357, 359 (Tex. App.—Texarkana 1995, no pet.) (citing *Brewer v. State*, 572 S.W.2d 719, 721 (Tex. Crim. App. [Panel Op.] 1978)). A trial court's comments do not constitute fundamental error unless they rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Jasper*, 61

8

S.W.3d at 421 (trial court's comments correcting defense counsel's misrepresentation of previously admitted testimony, showing irritation at the defense attorney, and clearing up a point of confusion were not fundamental error).

**B. Analysis**

Tate points to seven exchanges and contends that the cumulative effect of the trial court's comments unfairly influenced the jury and deprived him of a fair and impartial trial. Tate preserved error regarding one of these comments, which occurred outside of the presence of the jury. Tate failed to preserve error with respect to the other six comments. Accordingly, these six comments will warrant reversal only if they are fundamentally erroneous and rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Id.*

**1. Jury not present**

Two of the trial court comments to which Tate objects occurred outside the presence of the jury. In the first, Baxter became upset during cross-examination and left the witness stand. After excusing the jury, the trial court explained to Baxter that leaving the witness stand mid-questioning was not acceptable and that he could hold her in contempt for doing so. Tate contends the trial court acted as an advocate for the State by instructing Baxter on "how to be a more effective witness" in the following exchange:

9

THE COURT: But just because you have to repeat yourself, why would that make you walk off just because you are repeating yourself?

BAXTER: Because he is asking the same question several different ways and I have answered it several different ways.

THE COURT: And I think the jury understands that, but the law says that you are not to walk off when you have decided you've had enough, okay? So bear with us. I think we would all like to have this ended quicker.

BAXTER: Okay. I'm the one that's the victim here.

PROSECUTOR: Ma'am, just calm down. We're going to talk, okay?

THE COURT: Yes, you are.

PROSECUTOR: Listen to the Judge.

THE COURT: You are entitled to—but isn't it important that that's also perceived by the jury if you are? Well, what do you think a jury thinks about if you storm off because you've gotten annoyed?

TATE'S COUNSEL: Object to the Court instructing her.

THE COURT: Do you understand?

BAXTER: Yes, I understand you, Your Honor, and I will answer him with "yes" or "no" questions.

TATE'S COUNSEL: If I can have an objection—

THE COURT: Compose yourself. You know what, hold on. You can object in a moment when I am through, but again, don't interrupt this Court and you will have an opportunity to. Now, this Court is certainly not instructing anybody how to testify, but when you stand up and walk off and—

BAXTER:  I done tried to answer the same thing 5, 10 times.

THE COURT:  All right. Just bear with us, okay? Can you just compose yourself? Can you bear with us?

BAXTER:  I can try, yes.

. . . .

TATE'S COUNSEL:  Can I note my objection, Your Honor?

THE COURT:  Go ahead.

TATE'S COUNSEL:  I'm going to object to the extent the Court is instructing her how to be more a effective witness.  In other words, a more credible witness to the jury.  Of course, I don't have no objection—credible objection to the Court giving her general instructions about demeanor and decorum.

THE COURT:  Okay. You have made your point.

TATE'S COUNSEL:  But the Court is advising her how to be an effective witness.

THE COURT:  Okay.  You have made your point, and the Court is not telling you how to testify in any way except don't stand—don't jump up and walk off.

BAXTER:  Right. I understand and I apologize.

THE COURT:  Do you understand that?

THE WITNESS:  I apologize.

Of all of the complained-of comments on appeal, this is the only comment of the trial court to which Tate objected at trial.

11

In the second complained-of exchange that occurred outside the presence of the jury, the State challenged a juror for cause in the juror's presence. The juror was asked to leave the courtroom, and Tate complains that the trial court attempted to help the State by "instructing the prosecutor regarding 'trial technique' so that the prosecutor could gain favor with the jurors," when it said:

> THE COURT: The record will show that the juror has exited the courtroom. You know, not to tell you how to do things; but you don't want to make an objection for cause in front of him.
>
> PROSECUTOR: Oh.
>
> THE COURT: Because you're making an objection?
>
> PROSECUTOR: Yes.
>
> THE COURT: I deny it. And now you can but you're stuck with that now. You don't want to lose his favor by him thinking, you know— it's just a trial technique. You don't want him to think she's out to get me. She tried to get me, and here I am. There is always a fallback. I wish these guys and I never made such a mistake, but we all do. Don't worry about it; but, yeah, you don't want to do anything in front of him. You can do it when they are not here. Anything else? . . . .

Tate's only argument is that the trial court's comments unfairly influenced the jury, but the jury was not present for these two exchanges. Accordingly, we conclude Tate has not shown, as he argues, that the jury was unfairly influenced. *See Baca v. State*, 223 S.W.3d 478, 482 (Tex. App.—Amarillo 2006, pet. denied)

12

(no error where appellant's issue was grounded upon mistaken assertion that jury was present for trial court's allegedly improper comment).

## 2. Irritation with defense counsel

Tate next complains about an exchange, which relates to Tate's first issue, in which the trial court sustained the State's objection to Tate's counsel's voir dire questions regarding the NDAA. Tate responded that he believed the issue had been raised by the court in its voir dire, to which the trial court responded:

> What are you doing at 4:15 in the afternoon asking about that? Wait until I finish. Aren't—isn't the time of these people more valuable than some rhetoric on an opinion that doesn't have anything to do with the charges in this case, sir?

Tate also complains about an exchange that occurred after Baxter declined Tate's counsel's request to draw a diagram. Tate contends the trial court improperly acted "[a]s an advocate for the State . . . even instruct[ing] counsel for appellant not to make an objection, implying that appellant was attempting to do something improper with the jury:"

> TATE'S COUNSEL: Well, all you have to do is draw a square for the house, a rectangle for the truck, and a circle for the trampoline. Can you do that?
>
> BAXTER: Let me try to find a picture to show it better.
>
> PROSECUTOR: Judge, I'm going to object if she's already said that she can't do that and base her drawing on—

BAXTER: I'm fixing to have an anxiety attack and just call my psychiatrist and when it's good, we'll come back.

PROSECUTOR: Okay. And may I finish my objection? She is going to draw a diagram based on a photo that's already been admitted into evidence, I believe the photo might be the best. Judge, may I ask if—

THE COURT: Ma'am, just have a seat.

BAXTER: I can't see.

THE COURT: Sustained. Ask your next question.

TATE'S COUNSEL: Your Honor, it would be based upon her memory, so I think that would be—

THE COURT: I've just sustained the objection. Go to the next thing.

TATE'S COUNSEL: Let me object that—

THE COURT: You have made your objection. You know what the rules are. Again, you make your objection. The ruling has been made. You have preserved it. You don't need to say another word. Ask your next question. You know what the rules are.

TATE'S COUNSEL: There is another objection I have, Your Honor.

THE COURT: Move forward. I am ordering you to move forward and ask your next question.

TATE'S COUNSEL: The Court is instructing me not to make an objection?

THE COURT: Sir, you know what the rules are and you know what you are attempting to do with this jury.

TATE'S COUNSEL: I am not attempting to do anything.

14

THE COURT: The rules say when I make—when you make an objection—I have ruled on the objection.

TATE'S COUNSEL: This is a different one.

THE COURT: So, you are going to object to what she just objected to?

TATE'S COUNSEL: No, sir. This is a different objection.

THE COURT: Ask your next question. That's all I am ordering you to do. Please, go forward and if you want to make a Bill later you will have an opportunity to do that, okay. Thank you.

Tate's counsel did not later offer a bill on this issue.

Tate did not preserve error regarding either of these exchanges. In both, the trial court was expressing irritation with defense counsel's voir dire questions regarding irrelevant law and repetition of objections. But "a trial judge's irritation at the defense attorney does not translate to an indication as to the judge's views about the defendant's guilt or innocence." *Jasper*, 61 S.W.3d at 421. Accordingly, such comments do not constitute fundamental error. *See id.* at 420–21 (trial court's statement regarding defense counsel's questioning to "Come on . . . knock it off" was not fundamental error); *cf. Blue v. State*, 41 S.W.3d 129, 132 (Tex. Crim. App. 2000) (plurality op.) (trial court's comments to venire indicating that trial court would have preferred for the defendant to plead guilty were fundamental error that tainted the presumption of innocence).

15

### 3. Maintenance of control and expediting the trial

Tate complains that the trial court "related his opinion concerning appellant's questioning of the complainant," when, after the prosecutor objected as "asked and answered," the trial court said:

> THE COURT: I know what you are asking her, but let's get through this issue. I think we're beating this one pretty thoroughly. And we'll move on, but finish your thought.

Tate also objects to the trial court's statement at the end of the following exchange that the jury has "perceived what they need to see." Here, on cross-examination, Baxter testified that the hospital called the police because they "knew there was some fishy things in the past." On redirect, the prosecutor asked her to explain what she meant by "fishy things," and the following exchange occurred:

> BAXTER: Yes. I—me and myself and Tim was together and one day I just woke up in [the hospital]. They said I had been there for four days. . . . Tim is the only one who knew that I was in there on life support and he didn't call nobody. And there was choke—ligature marks around my neck. That's why they thought that I needed life support. He told me that he got a case number or Cause No.—
>
> TATE'S COUNSEL: Objection, Your Honor; relevance.
>
> PROSECUTOR: Judge, I believe the Defense Counsel—
>
> BAXTER: I'm almost finished.
>
> THE COURT: Hold on.

PROSECUTOR: I believe on cross-examination Defense Counsel opened up the door on this. So—

TATE'S COUNSEL: I don't see how I've opened the door to this, Your Honor. I mean, the question I asked her was did the police come.

THE COURT: I think I'm going to close this area off. I think we can move to another area. I believe the jury—

PROSECUTOR: Okay. Ms. Baxter—

THE COURT: —has perceived what they need—

PROSECUTOR: Thank you, Judge.

THE COURT: —to see in this area. Go ahead.

Tate did not preserve error regarding either of these exchanges. Tate argues that the trial court's comments in these two exchanges are comments on the weight of the evidence that caused egregious harm and were fundamental error. We disagree, because these comments are directed at "maintaining control" of and "expediting" the trial, responsibilities over which the trial court has "broad discretion." *Jasper*, 61 S.W.3d at 421. In both instances, the trial court's comments indicated that further questions regarding the same topic were unnecessary, because the topic had already been thoroughly covered. Such comments do not rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *Id.*; *see Murchison v. State*, 93 S.W.3d 239,

17

261–62 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (trial court's directive "Let's move along," stating that the witness had already answered the question asked, and instructing counsel not to argue with witness were not fundamental error); *see also Peavey v. State*, 248 S.W.3d 455, 469–71 (Tex. App.—Austin 2008, pet. ref'd) (trial court's comment that if jury "come[s] back early with a verdict, we'll probably end up breaking and starting testimony in the morning" was merely an "explanation to the jury about an anticipated delay in the trial," and was not fundamental error).

### 4. Clearing up a point of confusion

In the final complained-of exchange, Tate asked Baxter whether she had convictions for crimes of moral turpitude. She mentioned she had "two D.W.I.'s." Tate contends that what followed shows that "the trial judge stated to the trial jury that appellant was not being fair in his questioning":

TATE'S COUNSEL: No. No, ma'am. That's not—

THE COURT: You see—

TATE'S COUNSEL: Well, I think I am proceeding according to the Rules, Your Honor, as best I can.

PROSECUTOR: Objection. She's answered Mr. Kimler's improper impeachment.

THE COURT: Sustained.

18

TATE'S COUNSEL: I will move on. It's not improper impeachment, Your Honor.

THE COURT: Well, okay. I think trying to explain to a layman what the legal term "moral turpitude" is not really all that fair because it's a legal term that we go to law school to understand and that's the key on misdemeanors. Misdemeanors of moral turpitude are admissible, Ladies and Gentlemen, on cross-examination and in all fairness to a witness it ought to be narrowed down to what that means and not allow them an open door to try to figure it out. But anyway, ask your next question.

To the extent that this is a comment on the weight of the evidence, Tate did not preserve error regarding this comment, and therefore he must show that the comment constituted fundamental error and rose to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury" in order to warrant reversal. *See Jasper*, 61 S.W.3d at 421. Here, the trial court's comment appears to be an attempt to clarify that Baxter's D.W.I. convictions were not crimes of moral turpitude. We conclude that this comment was "aimed at clearing up a point of confusion," and thus does not constitute fundamental error. *Id.* (trial court's comment during cross-examination that witness already told defense that he did not give written statement to State, and subsequent comment to jury after recess that there was "no statement from this witness . . . reduced to writing" were aimed at clearing up a point of confusion and were not fundamental error).

19

**5. Cumulative effect**

Tate contends, finally, that "even if no one particular comment set out above would have constituted reversible error, their cumulative effect was to deny him a fair trial." We disagree. Because Tate did not preserve error regarding any of the comments that were made in the presence of the jury, and his sole argument is that the jury was unfairly influenced by the comments, reversal is not warranted absent fundamental error. The record reflects that Baxter was at times an emotional, uncooperative witness who disrupted the trial proceedings. The trial court had broad discretion in managing the trial, including regulating the decorum of the proceeding and promoting the proper questioning of witnesses, and we conclude that the trial court's comments do not rise to "such a level as to bear on the presumption of innocence or vitiate the impartiality of the jury." *See id.* at 421 (trial court has broad discretion in maintaining control and expediting the trial); *cf. Blue*, 41 S.W.3d at 132 (trial court's comments to venire indicating that trial court would have preferred for the defendant to plead guilty were fundamental error that tainted the presumption of innocence).

We overrule Tate's second and third issues.

## Lesser-Included Offense

In his fourth issue, Tate contends that the trial court erred refusing to submit the lesser-included offense of misdemeanor assault, because the jury reasonably could have concluded that he caused Baxter only bodily injury, rather than serious bodily injury. Thus, according to Tate, the jury reasonably could have determined that he was guilty only of simple assault, rather than aggravated assault. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2013), § 22.02(a)(1).

## A.  Standard of Review and Applicable Law

An offense qualifies as a lesser-included offense of the charged offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09 (West 2006).  We employ a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense.  *See Ex Parte Watson*, 306 S.W.3d 259, 262–63 (Tex. Crim. App. 2009); *see also Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App.

21

2007). The first prong requires the court to use the "cognate pleadings" approach to determine whether an offense is a lesser-included offense of another offense. *See Watson*, 306 S.W.3d at 271. The first prong is met if the indictment for the greater offense either: "(1) alleges all of the elements of the lesser-included offense, or (2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Id.* at 273. This inquiry is a question of law. *See Hall*, 225 S.W.3d at 535.

The second prong asks whether there is evidence that supports submission of the lesser-included offense. *Hall*, 225 S.W.3d at 536. "A defendant is entitled to an instruction on a lesser-included offense where . . . there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). "In other words, the evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Id.* (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a charge of a lesser-included offense, but it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense. *See id.* (citing

22

*Bignall*, 887 S.W.2d at 23); *Skinner v. State*, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing *Bignall*, 887 S.W.2d at 24). Rather, "there must be some evidence directly germane to a lesser-included offense for the factfinder to consider before an instruction on a lesser-included offense is warranted." *Skinner*, 956 S.W.2d at 543 (citing *Bignall*, 887 S.W.2d at 24).

When reviewing a trial court's decision to deny a requested instruction for a lesser-included offense, we consider the charged offense, the statutory elements of the lesser offense, and the evidence actually presented at trial. *Hayward v. State*, 158 S.W.3d 476, 478 (Tex. Crim. App. 2005) (citing *Jacob v. State*, 892 S.W.2d 905, 907–08 (Tex. Crim. App. 1995)). "The credibility of the evidence, and whether it conflicts with other evidence, must not be considered in deciding whether the charge on the lesser-included offense should be given." *Dobbins v. State*, 228 S.W.3d 761, 768 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd) (citing *Saunders v. State*, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)). If we find error and the appellant properly objected to the jury charge, we employ the "some harm" analysis. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005) (en banc).

**B. Analysis**

A person commits the offense of misdemeanor assault if he intentionally, knowingly, or recklessly causes bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01(a)(1), (b). A person commits the offense of aggravated assault if he commits misdemeanor assault and either: (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault. *Id.* § 22.02(a)(1)–(2). Here, the parties agree that the first prong of the test is satisfied. *See Irving v. State*, 176 S.W.3d 842, 845–46 (Tex. Crim. App. 2005) (noting that misdemeanor assault is lesser included offense of aggravated assault when conduct constituting misdemeanor assault is same conduct alleged in aggravated assault). Therefore, Tate was entitled to a lesser-included-offense instruction if the jury rationally could have concluded that Tate was guilty of only misdemeanor assault as opposed to aggravated assault.

Tate argues that he was entitled to submission of the lesser offense because Baxter's cross-examination revealed that she was "overplaying" her injuries, and the jury therefore could have concluded that Baxter did not sustain serious bodily injury. But "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to

a lesser included offense for the factfinder to consider . . . ." *Bignall*, 887 S.W.2d at 24.

Here, there is no evidence in the record from which the jury reasonably could have concluded that Baxter suffered only bodily injury, rather than serious bodily injury. *See* TEX. PENAL CODE ANN. § 1.07(8) (defining "bodily injury" as "physical pain, illness, or any impairment of physical condition"), (46) (defining "serious bodily injury" as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ") (West Supp. 2013). Baxter's testimony demonstrated that Tate hit Baxter in the face with a glass bottle, punched out a tooth, kicked and hit her until he fractured four of her ribs and caused her lung to collapse, and then prevented her from seeking medical care for three days. Baxter's medical records corroborate her testimony, and at trial, nearly six months after the incident, Baxter testified that her bones still had not healed. Tate adduced no controverting evidence. Thus, even if, as Tate contends, Baxter's cross-examination called her credibility into question and revealed she "overplayed" the injuries, it is not enough that the jury could have disbelieved the State's evidence regarding the greater offense. *Bignall*, 887 S.W.2d at 24. Accordingly, we conclude that the trial court did not err in denying Tate's request

25

for a jury instruction on the lesser-included offense of misdemeanor assault. *See Valadez v. State*, No. 03-11-00449-CR, 2013 WL 3481457, at *3 (Tex. App.—Austin July 2, 2013, pet. ref'd) (mem. op., not designated for publication) (where record showed that assault fractured complainant's leg, requiring medical attention, defendant charged with aggravated assault was not entitled to lesser-included instruction of misdemeanor assault because jury could not reasonably have concluded complainant sustained injury, but not serious bodily injury); *see also Hatfield v. State*, 377 S.W.2d 647, 649 (Tex. Crim. App. 1964) (cut lip and loss of teeth with hospitalization was serious bodily injury); *Lenzy v. State*, 689 S.W.2d 305, 310 (Tex. App.—Amarillo 1985, no pet.) (term "bodily member or organ" includes teeth and loss of teeth constitutes serious bodily injury).

We overrule Tate's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Rebeca Huddle
Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Do Not Publish. TEX. R. APP. P. 47.2(b).

26