Harvey Joseph **DOCKSTADER,** **Jr.,** Appellant

v.

The **STATE** of Texas, Appellee.

No. 14–06–00182–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 31, 2007.

Rehearing Overruled Sept. 20, 2007.

Henry W. Curtis, Houston, TX, for appellants.

Jessica Alana Caird, Houston, TX, for appellees.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

A jury convicted appellant Harvey Joseph Dockstader, Jr. of promoting a pyramid promotional scheme and assessed punishment at two years' incarceration in the Texas Department of Criminal Justice, State Jail Division, and a $10,000 fine. Appellant raises nine issues on appeal. We affirm.

### Factual And Procedural Background

Appellant is the founder of an organization known as Elite Activity. Since 2001, Elite Activity has maintained an internet website where people are invited to participate in a "cycle of abundance" through the giving and receiving of monetary "gifts." Participation in Elite Activity is based on the payment of money, the receipt of money, and the recruitment of new members. No products or services are sold. For a monthly fee, participants in Elite Activity may subscribe to the organization's internet service and track their progression through pyramid-shaped "panels" of "gifting." Appellant traveled to numerous churches across the southern United States to speak about Elite Activity, which he claims is inspired by God and based on the teachings of the Bible.

On June 24, 2005, in response to the arrest of one of Elite Activity's participants, appellant held a press conference on the front steps of the Harris County Criminal Justice Center. In his statement to the media, appellant repeatedly invited people to participate in Elite Activity. A videotaped excerpt of appellant's statement was broadcast on the Channel 39 evening news in Houston. On July 1, 2005, a Harris County grand jury indicted appellant. The indictment alleged that "on or about June 24, 2005, [appellant] did then and there unlawfully, intentionally and knowingly contrive, prepare, establish, operate, advertise, sell, and/or promote a pyramid promotional scheme." Appellant was convicted and sentenced to the maximum punishment allowed by law. This appeal followed.

In nine issues, appellant challenges the constitutionality of the pyramid promotional scheme statute, the legal and factual sufficiency of the evidence, the trial court's refusal to include a proposed mistake of fact defense instruction in the jury charge, and the conduct of the trial judge which appellant claims denied him his right to a fair and impartial trial.

### Discussion

**I. Appellant Failed to Preserve His Constitutional Challenges to the Pyramid Promotional Scheme Statute**

In his first, fourth, fifth, and sixth issues, appellant argues that section 17.461

of the Texas Business and Commerce Code ("the pyramid promotional scheme statute") is unconstitutional as applied to appellant. Appellant contends the pyramid promotional scheme statute violates his rights to free speech, free association, and free exercise of religion, pursuant to the United States and Texas Constitutions. *See* U.S. Const. Amend. I; Tex. Const. art. I, §§ 6, 8, 19, 27.

■ A party may challenge a statute on the grounds that it is facially unconstitutional or unconstitutional "as applied" to the party. *Curry v. State*, 910 S.W.2d 490, 496 (Tex.Crim.App.1995) (en banc); *Briggs v. State*, 789 S.W.2d 918, 923–24 (Tex.Crim.App.1990). In order to review an attack on the constitutionality of a statute as applied, the party challenging the statute must have raised the issue in the trial court. Tex.R.App. P. 33.1(a); *Curry*, 910 S.W.2d at 496; *King v. State*, 174 S.W.3d 796, 815 (Tex.App.-Corpus Christi 2005, pet. ref'd). Appellant's first, fourth, fifth, and sixth issues challenge the constitutionality of the pyramid promotional scheme statute "as construed and applied to appellant." Our review of the record shows that appellant did not object to the constitutionality of the statute at trial. Appellant argued to the jury that his conduct was justified by his religious beliefs. However, he did not move to quash the indictment or present his constitutional arguments to the court, and he did not request a ruling that the statute was unconstitutional. Because no specific, timely objection was made, appellant's challenges to the constitutionality of the pyramid promotional scheme statute as applied to appellant were not preserved for our review. *See* Tex.R.App. P. 33.1; *Curry*, 910 S.W.2d at 496; *King*, 174 S.W.3d at 815. Additionally, appellant's brief contains no arguments in support of his fifth and sixth issues and thus presents nothing for our review. *See* Tex.R.App. P. 38.1(h) (An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Appellant's first, fourth, fifth, and sixth issues are overruled.

## II. The Evidence is Legally and Factually Sufficient to Sustain Appellant's Conviction

In his seventh issue, appellant argues the evidence is factually insufficient to support his conviction. Appellant's eighth issue challenges the legal sufficiency of the evidence, and his second issue contends the trial court erred in denying his motion for instructed verdict. Because a complaint about the denial of a motion for instructed verdict is an attack upon the legal sufficiency of the evidence, we address appellant's second and eighth issues together. *McDuff v. State*, 939 S.W.2d 607, 613 (Tex.Crim.App.1997); *Myles v. State*, 946 S.W.2d 630, 636 (Tex.App.-Houston [14th Dist.] 1997, no pet.).

### A. Standards of Review

■ In a legal sufficiency review, we view all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Salinas v. State*, 163 S.W.3d 734, 737 (Tex.Crim. App.2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness's testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex.Crim.App.1998). We do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex.Crim.App.1993); *Harris v. State*,

164 S.W.3d 775, 784 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd).

In a factual sufficiency review, we consider all the evidence in a neutral light. *Prible v. State*, 175 S.W.3d 724, 730–31 (Tex.Crim.App.2005). The evidence may be factually insufficient in two ways. *Id.* at 731. First, when considered by itself, evidence supporting the verdict may be so weak the verdict is clearly wrong and manifestly unjust. *Id.* Second, where the evidence both supports and contradicts the verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* In conducting a factual sufficiency review, we must employ appropriate deference so that we do not substitute our judgment for that of the fact finder. *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App.1996). Our analysis must consider the evidence appellant claims is most important in allegedly undermining the jury's verdict. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

## B. Analysis

Under the pyramid promotional scheme statute, a person commits an offense if the person contrives, prepares, establishes, operates, advertises, sells, or promotes a pyramid promotional scheme. Tex. Bus. & Com.Code Ann. § 17.461(c) (Vernon 2002). "Pyramid promotional scheme" means a plan or operation by which a person gives consideration for the opportunity to receive compensation that is derived primarily from a person's introduction of other persons to participate in the plan or operation rather than the sale of a product by a person introduced into the plan or operation. *Id.* § 17.461(a)(6). "Compensation" means payment of money, a financial benefit, or another thing of value. *Id.* § 17.461(a)(1). The term does not include payment based on the sale of a product to a person, including a participant, who purchases the product for actual use or consumption. *Id.* "Product" means a good, a service, or intangible property of any kind. *Id.* § 17.461(a)(4).

### 1. Elite Activity is a Pyramid Promotional Scheme

We first consider whether the evidence is legally and factually sufficient to support the jury's finding that Elite Activity is a pyramid promotional scheme. Pastor Sean Riley of the Secret Place International Church testified he became involved with Elite Activity after watching a D.V.D. given to him by another pastor. Riley testified appellant came to Secret Place Church and introduced himself as the founder of Elite Activity. Riley began promoting Elite Activity and was arrested and charged with promoting a pyramid promotional scheme. At appellant's trial, Riley testified about the structure and purpose of Elite Activity. Riley testified new members of Elite Activity were invited to give a $100 "gift" to the senior member of a "panel" or "board" to begin their participation. A panel consisted of fifteen participants: eight "freshman," four "sophomores," two "juniors," and one "senior." An individual became a freshman by contributing $100 to the senior member of the panel. Elevation in status could be obtained only by recruiting additional people to participate. Recruiting two new people "pushed" the freshman invitee to the level of sophomore. To move from sophomore to junior, each of the two people recruited by the invitee had to recruit two more people. After becoming a senior, the invitee received the $800 in gifts paid by the freshman members of the panel. The invitee then restarted as a freshman on a different panel by making a new gift and recruiting new members. The amount of the gift required for participation increased as an invitee progressed from one panel to the

next. Elite Activity panels required gifts ranging from $100 to $6,000.

Riley testified participation in Elite Activity was strictly an exchange of money and did not involve the sale of any product or service. Riley further testified, "if I come into Elite Activity and give a hundred dollars, I cannot move through the activity unless I go get two people. I have to go get two people to do what I did. I can't just give it to you and then expect something in return if I do nothing .... that's how it works." Riley testified he did not know anyone who participated in Elite Activity without expecting to receive payment in return for their participation.

Russell Turbeville, the chief of the Consumer Fraud Division of the Harris County District Attorney's Office, testified as an expert on pyramid promotional schemes. Turbeville described Elite Activity as a typical "doubling" pyramid scheme in which each participant is required to recruit two new participants in order to receive compensation. Turbeville testified perpetrators of pyramid schemes frequently describe their activity as "gifting." Turbeville further testified participants in Elite Activity were required to pay $100 and "were encouraged to recruit at least two people who in turn would pay and recruit other people and ... you would eventually receive an $800 payment." Participants then had the option of reentering the scheme by "paying $250 into the chart that had a larger payoff and you could progress through a series of charts and possibly receive as much as $82,000." Participants in Elite Activity were also required to pay a monthly fee in order to track their participation on the Elite Activity website.

Appellant testified that the Elite Activity website provides an accurate description of how Elite Activity works. State's Exhibit 6 consists of printed pages of information from the Elite Activity website, which provide that "the goal" of participation in Elite Activity is "to qualify for receiving gifts." The website provides that participation begins by entering the "Head Start" panel "with your $100 gift and your two invitees ready to accept your invitation. You are now qualified to become a senior and start receiving gifts on that panel. You will need to have at least two invitees accept your invitation before you move to a forward panel." Participants progress through seven categories of panels, each of which requires a greater monetary gift.[1] When a participant becomes the senior member of a panel, he receives payment from each of the panel's eight freshman members. The website makes it clear that gifts are "not given in exchange for a product or service."[2]

Appellant testified in his own defense and gave the following description of Elite Activity: "When a participant chooses to participate, they give a gift. They start at the giving designation....They progress from the giving designation down to the receiving designation and then they have the potential to receive eight gifts, period." Appellant further testified that Elite Activity would continue to exist without the recruitment of new members because the existing participants would "continually give and receive." However, on cross-ex-

1. The "panel values" described on Elite Activity's website are "Head Start ($100), Elementary ($250), High School ($500), Junior Varsity ($1,000), College ($2,000), Masters ($4,000), and Graduate ($6,000)."

2. The Elite Activity website contains the following information: "Since the taxes on the gift have already been paid and because the gift is not given in exchange for a product or service and is NOT and [sic] investment, these gifts are not required to be reported as gross income of the recipient (See 26 USC § 102)."

amination appellant testified that "new participants coming in helps the activity grow." Appellant further testified Elite Activity formerly had more than 250,000 participants, and currently has approximately 3,500 active participants.

In his factual sufficiency argument, appellant fails to identify any specific evidence which he claims is contrary to the jury's finding that Elite Activity is a pyramid promotional scheme. *See Sims,* 99 S.W.3d at 603 (holding appellate court must consider evidence appellant claims is most important in undermining the jury's verdict). Rather, appellant's brief recites a ten-page quotation from the reporter's record and summarily concludes the evidence shows Elite Activity is a "belief system" in which "[b]elievers were requested to invite other believers to participate in the belief system."

We have reviewed the entire record in this case. Pastor Riley's testimony, which is corroborated by the Elite Activity website exhibit and the testimony of appellant himself, shows that Elite Activity is a highly organized plan or operation in which people pay money for the opportunity to receive money. Riley testified new participants pay $100 and recruit additional participants in order to achieve "senior" status and receive $800. Riley testified he was not aware of anyone who "gifted" in Elite Activity without expecting payment in return. Appellant's own testimony shows that participation in Elite Activity is based on the payment and receipt of money. Appellant testified participants "start at the giving designation," give a $100 "gift," and progress to the "receiving designation" where "they have the potential to receive eight gifts." It is of no consequence that the transfer of money is characterized as a "gift" by the person giving or receiving the payment. *See King,* 174 S.W.3d at 808–09 (holding woman's club with "gifting plan" satisfied the statutory definition of pyramid promotional scheme where the "plan involved a gift of $2,500 for a return of $10,000 and $5,000 for a return of $20,000, provided a sufficient number of women joined the club"). The statute requires only that the plan or operation is one in which "a person gives consideration for the opportunity to receive compensation that is derived primarily from a person's introduction of other persons to participate in the plan or operation rather than the sale of a product by a person introduced into the plan or operation." Tex. Bus. & Com.Code Ann. § 17.461(a)(6).

Riley testified participation in Elite Activity did not involve the sale of a product or service. Riley further testified participants in Elite Activity must recruit two additional people in order to "move through the activity" and become eligible to receive payment. Riley's testimony is corroborated by the Elite Activity website exhibit which, appellant testified, provides an accurate description of how Elite Activity works. The website provides that participation begins with a "$100 gift and your two invitees ready to accept your invitation." The website further provides that a participant "will need to have at least two invitees accept [his] invitation" before moving to a forward panel. Appellant testified Elite Activity currently has 3,500 active participants.

We find the evidence legally and factually sufficient to support the jury's finding that Elite Activity is a plan or operation by which a person gives consideration for the opportunity to receive compensation that is derived primarily from a person's introduction of other persons to participate in the plan or operation rather than the sale of a product by a person introduced into the plan or operation. *See id.*

**2. Appellant Promoted Elite Activity**

Next, we consider whether the evidence is legally and factually sufficient to support the jury's finding that appellant promoted Elite Activity, a pyramid promotional scheme. "Promoting a pyramid promotional scheme" means inducing or attempting to induce one or more other persons to participate in a pyramid promotional scheme; or assisting another person in inducing or attempting to induce one or more other persons to participate in a pyramid promotional scheme, including by providing references. *Id.* § 17.461(a)(5). "Participate" means to contribute money into a pyramid promotional scheme without promoting, organizing, or operating the scheme. *Id.* § 17.461(a)(3). Thus, we must determine whether the evidence is legally and factually sufficient to establish that appellant induced or attempted to induce one or more other persons to contribute money into Elite Activity on or about June 24, 2005. *See id.* § 17.461(a)(3), (5).

In his testimony at trial, appellant admitted he arranged and conducted a press conference on the front steps of the Harris County criminal courthouse on June 24, 2005. We have reviewed State's Exhibit 1–A, a videotape of appellant's press conference, which shows the following statements were made by appellant:

> We invite people who can give in a possibility that being a blessing to someone else can, in turn, bless their own life. . . . Our activity is spelled out on our website. . . . We have a cycle. We begin the cycle by giving a gift. We complete the cycle by receiving the gift. . . . I invite you to participate in a belief system where giving opens the way to receiving. . . . Start at the giving designation. Progress through the sharing and inviting designations and you complete by receiving.

In his factual sufficiency argument, appellant fails to identify any specific evidence which he claims is contrary to the jury's finding that he promoted Elite Activity. In his statements to the media, appellant repeatedly invited other persons to participate in Elite Activity by "giving a gift." Appellant also referred his audience to the Elite Activity website, where the "activity is spelled out." Our review of the record as a whole, and particularly the evidence from Elite Activity's website, shows that appellant's statements about the giving of "gifts" are references to the payment of money. Therefore, by inviting people to participate in Elite Activity by giving "a gift," appellant was inducing or attempting to induce one or more other persons to contribute money into Elite Activity, a pyramid promotional scheme.

Viewing the evidence in the light most favorable to the verdict, we find that any rational trier of fact could have found the essential elements of promotion of a pyramid promotional scheme beyond a reasonable doubt. *See King,* 174 S.W.3d at 808–09. (holding evidence supporting conviction for promotion of pyramid promotional scheme was legally sufficient where the defendant distributed information regarding the scheme and encouraged other persons to join). Viewing the evidence in a neutral light, we find the evidence supporting the jury's verdict is not so weak that the verdict is clearly wrong or manifestly unjust, nor is the contrary evidence so strong that the beyond-a-reasonable doubt standard could not have been met. Because we find the evidence is legally and factually sufficient to sustain the jury's verdict that appellant promoted a pyramid promotional scheme, appellant's second, seventh, and eighth issues are overruled.

### III. Appellant was Not Entitled to a Jury Instruction on the Mistake of Fact Defense

In his third issue, appellant claims the trial court erred in refusing to

instruct the jury on appellant's mistake of fact defense. Section 8.02 of the Penal Code provides that "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense." Tex. Penal Code Ann. § 8.02(a) (Vernon 2003). An accused has the right to a jury instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of the evidence. *Murchison v. State*, 93 S.W.3d 239, 252 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd). However, if the evidence viewed in a light favorable to appellant does not establish a mistake of fact defense, then the trial court did not err in refusing an instruction. *Id.* Therefore, the issue is whether the evidence cited by appellant, if believed, raises a mistake of fact defense by negating appellant's culpable mental state. *Id.; Legere v. State*, 82 S.W.3d 105, 109 (Tex.App.-San Antonio 2002, pet. ref'd).

Appellant's arguments regarding this issue focus on statements made by appellant during the press conference on June 24, 2005. According to appellant, the issue is "whether appellant's statements at a press conference to the media assembled in front of the court house to defend the integrity of his belief in Luke 6:38, if believed, raise a mistake of fact defense." Appellant does not direct us to any specific evidence introduced at trial which he contends raises an issue as to a mistake of fact. During the press conference, appellant attempted to explain to the media why Elite Activity was not an illegal pyramid scheme. In his appellate brief, appellant contends that "[a]ccepting appellant's statement to the press conference [sic] as true, he could not have 'intentionally or knowingly' promoted a pyramid promotional scheme, or 'intended' to violate any portion of the consumer protection act."

Under the pyramid promotional scheme statute, a person commits an offense if that person intentionally or knowingly contrives, prepares, establishes, operates, advertises, sells, or promotes a pyramid promotional scheme. Tex. Bus. & Com. Code Ann. § 17.461(c); *King*, 174 S.W.3d at 808. The statute does not require appellant to have acted with the belief that his conduct was illegal, or with intent to violate the statute. Tex. Bus. & Com. Code Ann. § 17.461(c); *see also Austin v. State*, 769 S.W.2d 369, 372 (Tex.App.-Beaumont 1989, pet. ref'd) (finding defendant who promoted endless chain scheme was not entitled to mistake of fact defense based upon his mistaken belief that his activity was lawful). Based on our review of appellant's statements at the press conference, we find that the only "mistake" appellant made was believing his actions were lawful. Such a belief is not a mistake of fact. *Vitiello v. State*, 848 S.W.2d 885, 887 (Tex. App.-Houston [14th Dist.] 1993, pet. ref'd). Accordingly, appellant was not entitled to a jury instruction on mistake of fact, and his third issue is overruled.

## IV. Appellant was Not Denied His Right to Fair and Impartial Trial

In his ninth issue, appellant claims he was denied his right to a fair and impartial trial because the trial judge showed favoritism towards the State's case. Appellant directs us to an excerpt from the reporter's record of the punishment hearing, which he contends "shows favoritism towards the State's case [and] that the judge appeared to be partial which lead to suspicions as to the fairness and integrity of the court." The State argues appellant failed to show the trial judge acted improperly or that her comments prejudiced him. We agree with the State.

The parties have a right to a fair trial. *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). One of the most fundamental components of a fair trial is a neutral and detached judge. *Id.* A judge should not act as an advocate or adversary for any party. *Id.* To reverse a judgment on the ground of improper conduct or comments of the judge, we must find (1) that judicial impropriety was in fact committed, and (2) probable prejudice to the complaining party. *Id.* The scope of our review is the entire record. *Id.* at 87. Judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id.* Such remarks may constitute bias if they reveal an opinion deriving from an extrajudicial source; however, when no extrajudicial source is alleged, such remarks will constitute bias only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

Appellant claims the trial judge showed favoritism by stating, "I told you that I have made my ruling and that if I am incorrect, you got me [on appeal]." The trial court's comment, which was made in the context of a discussion regarding appellant's request for a jury charge on the defense of mistake of fact, does not show impropriety or prejudice. The trial judge was merely informing appellant that if her ruling was incorrect appellant would prevail on appeal.

Appellant next argues the trial judge demonstrated bias by refusing to answer the following question:

[Appellant's counsel]: Do you acknowledge the existence of a Supreme Being?

[The Court]: I am not here to answer your questions, sir. Do you have any objections or anything else that you would like to put on the record before we get started with the punishment phase?

The trial judge's refusal to answer appellant's trial counsel's question regarding her personal beliefs does not demonstrate impropriety or prejudice. To the contrary, the trial judge's refusal to respond avoided the introduction of extrajudicial information into the proceeding.

Finally, appellant claims the trial judge showed favoritism by denying his motion for mistrial. Appellant moved for mistrial on the ground that the State failed to produce a copy of a D.V.D. made by Pastor Riley.[3] The trial court ruled that appellant was not entitled to a copy of the D.V.D. because it was not part of the State's file in appellant's case. Appellant does not raise this evidentiary issue on appeal, and has failed to demonstrate that the trial judge acted with bias or impropriety in denying his motion for mistrial.

We have reviewed the entire record in this case and find no indication of judicial impropriety or bias in favor of either party. Appellant's ninth issue is overruled.

### CONCLUSION

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

3. The State obtained a copy of a D.V.D. made by Pastor Riley in connection with the prosecution of Pastor Riley for promotion of a pyramid promotional scheme. However, according to the prosecutor, Pastor Riley's D.V.D. was not made part of the State's file in appellant's case because appellant denied having any involvement with the D.V.D.