**AFFIRMED; Opinion Filed December 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00340-CR

**JANINE JOYCE CHARBONEAU, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 6**
**Collin County, Texas**
**Trial Court Cause No. 006-80751-2012**

## MEMORANDUM OPINION
Before Justices Bridges, Lang, and Evans
Opinion by Justice Evans

Janine Joyce Charboneau appeals from her conviction following a jury trial for animal cruelty. In two issues, Charboneau contends her conviction should be reversed because the trial court demonstrated bias in the proceedings below and erred in not suppressing evidence obtained through the execution of improperly issued warrants. We affirm the trial court's judgment.

### I. FACTUAL BACKGROUND

On November 16, 2011, Collin County Animal Control Officer Danny Davis received an anonymous phone call concerning possible animal cruelty involving horses. Officer Davis responded by visiting the property where the informant stated the horses were being kept to investigate the allegation. The property was located in a residential area and included a half-acre pen containing several horses. It was later established that the property belonged to Janine Charboneau. According to Davis, the horses on the property were thinner than normal and the

pen was dirty, but they had food and water and room to move around. The pen was located near the residence and next to a 600 square foot metal shed.

As Davis was observing the horses, he heard dogs barking inside the shed. Davis stated he could tell from the barking that the shed contained multiple dogs of both large and small breeds. Davis further stated that there was an odor coming from the shed that, from his experience in animal control, he associated with animal hoarding.

Davis then saw a young woman walk out of the residence with a greyhound dog. The girl was Charboneau's daughter, Madison McInnis. According to Davis, the greyhound with McInnis appeared to be "very emaciated." McInnis told Davis that the dog did not belong to her and she was keeping the dog for someone else. McInnis testified she also told Davis that her mother was a veterinarian and the dog was on a special diet. Davis denied being told either of these things by McInnis. Davis asked about the dogs in the shed and McInnis told Davis he could not go into the shed unless he spoke with her mother first.

Davis and McInnis contacted McInnis's father who had Charboneau call Davis. Charboneau told Davis she was a veterinarian practicing in the area of animal behavior. Davis then told Charboneau he wanted a "real vet" to check on the condition of the horses. When Davis asked permission to check on the dogs in the shed, Charboneau refused to allow him to enter. Davis took several pictures of the greyhound to document its condition and contacted the sheriff's department to request a warrant to enter the shed.

Deputy Nathan Holton responded to Davis's call and went to meet him at Charboneau's property. Davis and Holton knocked on the residence door, but no one responded. McInnis testified she heard the officers knocking and chose not to answer. Holton testified he could hear dogs barking in the shed and could smell an odor of dog feces coming from inside. Holton then called Sergeant Chris Ware to relay his and Davis's observations for purposes of obtaining a

–2–

warrant to search the shed and seize any animals that were in danger. Holton stated that Davis never told him the property owner was a veterinarian and, accordingly, he did not relay this fact to Ware.

Ware testified he received a call from Holton stating there was a dog on the property that was emaciated and needed care. Holton further told him that if the dog did not get proper care, it was in danger of dying. Finally, Holton told Ware there were other animals on the property that possibly also needed veterinary care. Based on this information, Ware requested a seizure warrant under section 821.022 of the Texas Health and Safety Code. Ware submitted a probable cause affidavit in support of the warrant request that stated in relevant part:

> On November 16, 2011, at approximately 12:30 pm, Collin County Sheriff's Deputy N. Holton was dispatched to [Charboneau's residence] in Lucas Texas in reference to a Cruelty to Animals call. Upon arrival, Deputy Holton made contact with Collin County Animal Services who alerted him to the location of the animals. Animal Control Officer Davis had observed a white Greyhound dog on property; Davis described the dog as emaciated and in poor health. Davis said that he could hear other dogs barking on the property but could not see them. Davis believes that the other dogs on the property may also be in need of veterinary care.

A seizure warrant was issued that afternoon and Ware delivered it to the property.

Once the warrant was received, Davis and a second deputy tried again to make contact with someone in the residence, but no one answered the door. At that point, Davis received another phone call from Charboneau who told him that she was on her way to the property and she would be there shortly. Charboneau asked them not to involve her children. Davis and the deputy waited approximately two hours, but Charboneau never arrived. They then went forward with executing the warrant.

Davis testified that the interior of the shed was filthy, covered in urine, feces, and dog hair. He stated the smell was overpowering. He found animals stacked in cages with two animals placed in cages that were not large enough to hold a single animal. He also found

–3–

animals being kept in plastic tubs and trash cans in four or five inches of their own waste. Based on what was found in the shed, Davis requested a second warrant to seize the remainder of the animals located on the property, including the greyhound in the residence. The same probable cause affidavit was used to support issuance of the second warrant. Ultimately, 31 dogs were removed from the shed and approximately 17 dogs were removed from the residence.

McInnis testified that the dogs in the shed belonged to her mother and that they were not there because they were sick. McInnis also testified that her mother had a medical condition that made it hard for her to care for the dogs appropriately. McInnis conceded that the shed was dirty and unsanitary. According to McInnis, Charboneau was simply doing the best she could given her condition.

Charboneau was arrested and charged with cruelty to non-livestock animals by "intentionally, knowingly, or recklessly fail[ing] unreasonably to provide necessary food or water or care or shelter for an animal, to-wit: dogs in [her] custody . . . ." Following a trial at which Charboneau represented herself, the jury convicted her and assessed punishment at 365 days' confinement and a $2000 fine. The jury recommended that the sentence be suspended. The trial court placed Charboneau on community supervision for 24 months and assessed 10 days' confinement in jail among other conditions. Charboneau now brings this appeal.

## II. ANALYSIS

### A. Judicial Bias

In her first issue, Charboneau contends the verdict against her is tainted because the trial judge demonstrated prejudice and bias against her in the presence of the jury. Specifically, Charboneau complains that the trial judge made a comment to the jury that Charboneau "voluntarily absented" herself from the proceedings when she failed to return to court following an afternoon break. Charboneau states that her failure to return to court that day was not

–4–

"voluntary" but rather the result of a medical emergency during which she suffered an elevation in her heart rate and blood pressure. Charboneau asserts that the trial judge's characterization of her absence as voluntary "vitiated the presumption of innocence" before the jury.[1]

To reverse a judgment based on improper conduct or comments of the judge, we must find that judicial impropriety was committed and that the complaining party suffered probable prejudice as a result. *See Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). The scope of our review is the entire record. *Id*. Judicial remarks during the course of a trial that are critical, disapproving, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. *Id*. Such remarks may demonstrate bias if they reveal an opinion arising from an extrajudicial source. *Id*. However, when no extrajudicial source is alleged, such remarks will support a bias challenge only if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*

The comment about which Charboneau complains does not constitute judicial impropriety. The term "voluntarily absent" comes from article 33.03 of the Texas Code of Criminal Procedure which requires the presence of the defendant at trial in all misdemeanor cases where the punishment, or any part thereof, is imprisonment unless the defendant "voluntarily absents" herself after pleading to the indictment or information. TEX. CODE CRIM. PROC. ANN. art. 33.03 (West 2006). Although the trial judge stated that Charboneau's absence was voluntary, he did not proceed with the trial without her, but rather recessed until the next morning when Charboneau returned to court. His statement related to the status of the proceeding and does not demonstrate any antagonism toward Charboneau. Nor can it be viewed

---

[1] We note that Charboneau neither filed a motion to recuse nor raised this issue in her motion for new trial. Based on these failures, the State contends Charboneau failed to preserve the issue of bias for appellate review. Charboneau responds that she was unaware of the comment made the focus of her appellate challenge until she read the reporter's record in preparation for her appeal because the comment was made outside her presence. We do not decide the waiver issue and address Charboneau's arguments on the merits.

as a comment on, or opinion about, the merits of her case. There is no evidence that the trial judge was aware of Charboneau's alleged medical emergency at the time he made the statement.

Although Charboneau summarily asserts that the judge's comment "vitiated the presumption of innocence," she offers no argument or authority to support this contention or explain how the statement about which she complains relates to the State's burden of proof. The jury charge included the following instruction:

> All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. The fact that a person has been arrested, confined, or charged with an offense gives rise to no inference of guilt at her trial. The law does not require a defendant to prove her innocence or produce any evidence at all. The presumption of innocence alone is sufficient to acquit the defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all of the evidence in the case.

There is nothing in the record to indicate that the jury did not follow this instruction.

Charboneau points to other actions of the trial judge that she alleges demonstrate bias including requiring her to serve ten days in jail and sustaining the state's objection to the testimony of her personal physician. She generally asserts that these actions were biased, unfair, and in violation of numerous provisions of the U.S. and Texas constitutions. She presents no independent issues on appeal, however, assigning error to these actions. The remedy for unfair rulings is to assign error to the ruling itself rather than to complain of bias. *See In re City of Dallas*, 445 S.W.3d 456, 467 (Tex. App.—Dallas 2014, no. pet. h.). Furthermore, bias almost never can be shown based solely on the judge's rulings in the case. *See id.*; *see also Liteky v. United States,* 510 U.S. 540, 555 (1994) (judicial rulings "can only in the rarest circumstances evidence the degree of favoritism or antagonism required to establish bias"). After examining the record as a whole, we conclude Charboneau has failed to demonstrate any bias on the part of the trial judge requiring reversal. We overrule her first issue.

**B. Probable Cause Affidavits**

In her second issue, Charboneau contends the trial court erred in not suppressing the evidence obtained through the execution of the seizure warrants because the warrants were not supported by probable cause. In addition, Charboneau argues the warrants were invalid because the affidavits supporting their issuance omitted the material fact that she was a veterinarian. We review the evidence regarding probable cause affidavits using a "totality of the circumstances" standard of review. *See Heitman v. State*, 789 S.W.2d 607, 610 (Tex. App.—Dallas 1990, pet. ref'd). After reviewing the supporting affidavit realistically, and with common sense, we must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed. *See State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The test is whether a reasonable reading by the magistrate would lead to the conclusion that the four corners of the affidavit provide a substantial basis for issuing the warrant. *Id*. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id*. Even in close cases we give great deference to a magistrate's determination of probable cause. *Id*.

The facts set forth in the probable cause affidavits at issue here showed the following: A deputy was dispatched to Charboneau's residence in reference to a cruelty to animals call. The deputy met an animal control officer on the property who stated he had observed a dog that was "emaciated and in poor health." The animal control officer also heard other dogs on the property barking in such a manner that he believed they could also need medical care. The combined logical force of these facts is that an officer, trained in the area of animal cruelty, saw and heard animals on the property that he believed were being unreasonably neglected and in need of medical care. Such facts provide a substantial basis for the magistrate to conclude there was a fair probability that evidence of a crime would be found on the property.

Charboneau argues the warrants were invalid because they omitted the fact that she was a veterinarian. According to Charboneau, this fact would have negated the assertion in the affidavit that the dogs on her property were in need of "veterinary care" and removed probable cause for the warrant. In *Franks v. Delaware*, the United States Supreme Court recognized that, if an affirmative misrepresentation is knowingly included in a probable cause affidavit in support of a warrant, and the misrepresentation is material and necessary to establishing probable cause, the warrant is invalid. *See Franks v. Delaware*, 438 U.S. 154, 164–65 (1978). A misstatement that is the result of simple negligence or inadvertence, however, as opposed to reckless disregard for the truth, will not make the warrant invalid. *See Dancy v. State*, 728 S.W.2d 772, 783 (Tex. Crim. App. 1987). The Texas Court of Criminal Appeals has not yet recognized that a *Franks* analysis applies to omissions in addition to false statements. *See Brooks v. State*, 642 S.W.2d 791, 796–97 (Tex. Crim. App. [Panel Op.] 1982). But, the Fifth Circuit, along with other Texas appellate courts, including this one, has concluded that allegations of material omissions should be treated in the same manner as alleged material misstatements. *See United States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980); *State v. Verde*, 432 S.W.3d 475, 483–84 (Tex. App.— Texarkana 2014, pet. ref'd); *Blake v. State,* 125 S.W.3d 717, 724 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Heitman* 789 S.W.2d at 610–11; *Melton v. State,* 750 S.W.2d 281, 284 (Tex. App.—Houston [14th Dist.] 1988, no pet.).

In this case, Sergeant Ware, who signed the probable cause affidavit, was never informed that Charboneau was a veterinarian. Officer Davis, who supplied the information upon which the probable cause affidavit was based, testified that although Charboneau told him she was a veterinarian, she also told him she practiced in the area of animal behavior, not medical care and treatment. According to Davis, he considered it irrelevant that Charboneau was an animal behaviorist because the animals appeared to need medical treatment. Furthermore, Davis

stated that the fact that Charboneau was a veterinarian did not mean she was not engaging in acts of animal cruelty.

The record does not support a conclusion that the failure to include the fact that Charboneau was a veterinarian in the probable cause affidavit was done with reckless disregard for the truth. Indeed, other facts that would have supported probable cause, including the intense odor emanating from the shed that Davis associated with animal hoarding, were also left out of the affidavit. When the same affidavit was submitted for the second warrant, it omitted numerous new facts about the conditions found in the shed when the first warrant was executed. In determining whether there was a reckless disregard for the truth, the trial court could properly consider all the facts known when the probable cause affidavit was submitted. Finally, the addition of the fact that Charboneau was a veterinarian would not have rendered the affidavit, read as a whole, insufficient to show probable cause. The affidavit stated the animals to be seized were at Charboneau's residence, not a veterinary clinic. At least one animal on the property appeared to an officer trained in animal cruelty to be suffering from unreasonable neglect. As Davis stated, nothing about Charboneau's status as veterinarian rendered her incapable of committing acts of animal cruelty. We resolve Charboneau's second issue against her.

We affirm the trial court's judgment.


Do Not Publish
TEX. R. APP. P. 47
131340F.U05

/David Evans/
DAVID EVANS
JUSTICE

–9–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JANINE JOYCE CHARBONEAU,
Appellant

No. 05-13-00340-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
No. 6, Collin County, Texas
Trial Court Cause No. 006-80751-2012.
Opinion delivered by Justice Evans.
Justices Bridges and Lang participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of December, 2014.