**Opinion issued February 4, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00145-CR

———————————

**J.R. WASHINGTON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1478770**

---

## MEMORANDUM OPINION

J.R. Washington pleaded guilty to the offense of murder.[1] The trial court then

sentenced Washington to 30 years' imprisonment. In one issue on appeal,

---

[1] *See* TEX. PENAL CODE § 19.02(b)(1).

Washington contends the trial court deprived him of due process by refusing to consider the full range of punishment for the offense and mitigating evidence.

We affirm.

## Background

The State charged Washington with the offense of capital murder.[2] Washington pleaded guilty to the reduced offense of murder without an agreed recommendation as to punishment. The trial court accepted Washington's plea and reset the case for sentencing.

A presentence investigation report (PSI) was prepared after Washington entered his plea. At the sentencing hearing, the State called Detective B. Nabors, a homicide detective with the Houston Police Department, who investigated this case. Nabors testified that, on February 17, 2014, there was a home invasion at 4926 Weeping Willow in Houston, Texas, during which Amides Artiga was killed.

Nabors testified that there were several witnesses to the murder, including several workers at the nearby businesses. The witnesses described seeing a black sedan pull up in front of the residence and two black males exit the sedan, after which, the sedan drove away. The two men who exited the sedan were wearing black clothing and ski masks. They jumped the fence to the residence and kicked in

---

[2] *See id.* § 19.03(a)(2).

2

the front door. The witnesses' description of the weapons carried by the two men varied—some described seeing both men carrying shotguns, one carrying a shotgun and the other carrying a handgun, or one carrying a shotgun and the other carrying a stick. Shortly after seeing the two men kick down the door of the residence, the witnesses heard a gunshot. The witnesses then saw the two men jump back over the fence and run away. The black sedan picked up the two men and drove away.

Detective Nabors further testified that he interviewed Artiga's mother, Kathy, and brother, Israel, who were home at the time of the murder. Kathy was asleep on the couch and Israel was asleep in his room when the "door was crashed in." According to Artiga's mother, after the two men kicked the door down, they all were taken into Artiga's room and placed on the floor face down. Shortly after that, they heard the gunshot—they did not see who shot Artiga. Artiga died from a shotgun wound to the chest.

Detective Nabors testified that when Washington was interviewed about his involvement with the murder,[3] he gave three different accounts. First, Washington denied any involvement in the murder. Second, Washington claimed he was involved only as the getaway driver. Third, Washington claimed he held the victim's

---

[3]     Little to no evidence was introduced at the sentencing hearing about how Washington was identified as a suspect in this case.

family at bay with a stick while the other suspect ransacked the house. When the victim began to "bow up," Washington claimed that the other suspect shot him.

The State introduced a number of exhibits, including photographs of the crime scene and the autopsy report. Washington presented several witnesses to testify on his behalf, including his mother, his girlfriend, and his girlfriend's daughter. Both sides then rested.

During closing argument, Washington's counsel focused on Washington's purported role in the crime to argue that he deserved a lesser sentence. She argued: "[T]here is not one shred of evidence that this man is the shooter. . . . [T]he only thing they've ever said is that somebody had a shotgun and somebody had a stick." After briefly allowing this argument, the trial court interjected:

> I'm going to — can I say something to both sides? And I will let you argue whatever you wish to argue. I think there's a shred of evidence all kinds of ways about who did what in this case, but from the Court's perspective, I'm not sure it diminishes your client's responsibility one way or the other.

The conversation continued between the trial court and counsel as follows:

[Defense]: But, Judge, there—there's no evidence that he is the—that he's the shooter . . . . we are here and have pled guilty to being a party to, but his position has been and to this day maintains that he is not the shooter. And it's interesting—

The Court: That doesn't make him less guilty.

[Defense]: It—well, it doesn't make him less guilty, . . . I think it affects . . . what type of sentence he would receive. We're not saying that he's—

4

The Court: What I'm trying to tell you as clearly as I can, both sides, I'm not going to make that determination. I think there's argument for both sides here whether he was, inconsistent statements, somebody said yes, somebody said no, somebody said there were two shotguns, someone said there was a stick.

I'm—I'm telling you, in the grand scheme of things, as far as his sentencing goes, I feel like he was totally aware, whatever was going to happen in that place, okay, and could totally anticipate what was going to happen.

[Defense]: That's the—that's the reason that he entered the plea, is because—

The Court: That's all I'm saying. So it's really—I'm not going to that place, well, I think he actually shot him. I don't know if he shot him. There's enough dispute there for me not to go off of that determination. But I'm telling you, I see full awareness of what he was doing, okay?

[Defense]: That's—and that's exactly why we pled guilty to this, because—

The Court: All right.

[Defense]: —it can be reasonably anticipated that if somebody took a gun into there to get—to rob those people and try to get the drugs that this man had, that somebody—that somebody would be injured or killed, and that's exactly why we pled guilty, Judge.

The Court: I'm just trying to tell you, I don't really need for you to— you may if you wish—argue whether he was the shooter or wasn't the shooter. That's really not my focal point, to be perfectly honest with you. I just think what happened was so close and such a dispute and the awareness factor was still there. It's not really going to be determinative to me as to what I'm going to do in this case. I can't make that any clearer.

. . . .

5

[Defense]: I guess what you're trying to tell me is you don't think that the person who pulls the trigger is . . . worse than the guy— than the person who—

The Court: I'm trying to tell you I don't have to make that determination. I'm saying what I believe your client's involvement . . . was sufficient for the Court . . . to be convinced he was fully aware and could have anticipated what was going to happen.

Washington's counsel then continued to argue that because Washington was not the shooter, he was less culpable than the person who actually pulled the trigger.

[Defense]: . . . the greater the guilt the greater the sentence. The less the guilt the less of the sentence. I submit that my client is not the shooter. And I know that doesn't make a hill of beans to you, and I'm—

The Court: I didn't say that.

[Defense]: —very clear on that.

The Court: I didn't say that. I said it just cannot be determined, but it doesn't diminish his participation. That's all I said.

Washington's counsel requested that the trial court take Washington's role in the crime into consideration, as well as evidence that he has "turned out to be a good father, a good mentor, . . . and a reasonably good citizen of this county, even though he [was] . . . a party to a horrible act." Washington's counsel then requested he receive a sentence between 8 and 15 years.

The State then presented its closing argument—focusing on the seriousness of the offense and on the "life that was brutally taken." The State asked the trial court to sentence Washington to at least 50 years, if not life, in prison.

In rendering its sentence, the trial court acknowledged that it appeared that Washington was able to get past some of the "unfortunate" parts of his past and childhood, including being "passed around," but "it doesn't give him a pass in terms of what happened." The trial court further explained:

> I hope your client understands that just because he believes or he thinks or he's taken the position he wasn't the shooter, that that makes his culpability or his responsibility any less. He's wrong. I hope he doesn't feel that way, because that will never lead to any—to any change in his life, real change in his life.
>
> . . . .
>
> [T]here's no doubt based on the evidence that I heard and your plea of guilty that you didn't know what may happen in that house, one way or the other. None. So in a sense I don't necessarily differentiate tremendously in terms of number of years about that issue.
>
> You're breaking into a house, one of you have or both have a gun, and someone ends up shot. Duh. That's the responsibility you should be taking. That's what the Court has to weigh. It is not an easy decision, I hope you know.
>
> I studied the facts. I understand the facts [and] . . . a lot of inconsistencies. . . . In my mind you knew full well what could happen going in that house. 19 or not.

The trial court then sentenced Washington to 30 years in prison.

## Judicial Bias in Sentencing

Washington now argues on appeal that the trial court showed bias and partiality when it refused to consider the full range of punishment and what Washington contends is mitigating evidence of his role as the non-shooter. In doing so, Washington contends that the trial court violated his due process rights.

7

Washington acknowledges that he did not object to the trial court's alleged bias during the punishment hearing but contends that an objection was not required because his right to an impartial judge is a systematic requirement, the denial of which may be challenged for the first time on appeal.

## A.    Standard of Review

A defendant has a due process right to a neutral and detached hearing body or officer. *See Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A defendant is denied due process when a trial court refuses to consider the evidence, arbitrarily refuses to consider the entire range of punishment, or imposes a predetermined sentence. *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *Buerger v. State*, 60 S.W.3d 358, 364 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("A trial court denies due process where it arbitrarily refuses to consider the entire range of punishment for an offense or refuses to consider mitigating evidence and imposes a predetermined punishment.").

When a claim of judicial bias is raised, we must review the entire record to determine whether the judge's bias or prejudice denied the defendant due process. *See Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). Absent a clear showing of bias in the record, we are required to

8

presume that the trial court was neutral and unbiased in the execution of its judicial duties. *See Brumit*, 206 S.W.3d at 645; *see also Jaenicke*, 109 S.W.3d at 796.

**B.      Preservation of Error**

We begin by addressing Washington's argument that his failure to object to the trial court's alleged bias during sentencing is excused because his right to an impartial judge is a systemic requirement that cannot be forfeited by the failure to object. *See* TEX. R. APP. P. 33.1(a) (requiring a timely request, objection, or motion to preserve a complaint for appellate review). We agree that violations of some rights, including denials of "absolute systemic requirements," may be challenged for the first time on appeal. *See Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds*, *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) ("Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. A princip[al] characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone." (internal citations omitted)).

Both this Court and our sister court, the Fourteenth Court of Appeals, have reviewed for fundamental error unpreserved complaints about a trial judge not being impartial. *See Barfield v. State*, 464 S.W.3d 67, 81 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd); *Avilez v. State*, 333 S.W.3d 661, 671 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) ("[V]iolations of rights that are 'waivable only' and denials

of 'absolute, systemic requirements' are considered 'fundamental error' and may be raised for the first time on appeal.").[4] As in *Barfield* and *Avilez*, even if we could review Washington's unpreserved complaint for the first time on appeal, the record here does not demonstrate partiality of the trial court or that the trial court failed to consider mitigating evidence or the full range of punishment such that Washington was denied due process or an absolute, systemic requirement. *See Brumit*, 206 S.W.3d at 644–45; *Avilez*, 333 S.W.3d at 671–73.

## C. Application

Turning to the merits of Washington's argument, he contends that the trial court "refused to allow [his] attorneys to argue that the mitigating evidence called for a reduced sentence in light of [his] role as the non-shooter." Washington further argues that the trial court's comments "that she does not know who shot [Artiga] and does not care," are evidence of her bias and failure to consider the full range of punishment available for the offense. Washington likewise argues the trial court's comments that Washington was late to a previous hearing are indicative of the trial court's bias and refusal to consider a lower sentence. We disagree.

---

[4] *Jaenicke v. State*, 109 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Blue v. State*, 41 S.W.3d 129, 131 (Tex. Crim. App. 2000)) (describing fundamental error in terms of fundamental rights sought to be protected and explaining that some rights are so fundamental that they may not be forfeited by inaction).

The record before us does not establish that the trial court arbitrarily refused to consider mitigating evidence or imposed a predetermined sentence. To the contrary, the record shows that the trial court ordered a PSI, heard testimony from several witnesses, and considered several exhibits admitted at the hearing, as well as the PSI report, before making the complained-of comments and imposing a sentence. *See Brumit*, 206 S.W.3d at 645 (rejecting argument that trial court was biased and imposed predetermined sentence in part because complained-of statements were made by trial court "only after hearing all of th[e] evidence"). Washington does not point to a single objectionable comment the trial court made *before* hearing all of the evidence. *See Garrett v. State*, 693 S.W.3d 490, 500 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd).

And none of the trial court's comments indicate that it refused to consider the entire range of punishment. *See, e.g.*, *Cabrera v. State*, 513 S.W.3d 35, 39 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (concluding that trial court's statement before jury selection that if appellant exercised his right to jury trial he should not be "under any illusion" that he would receive thirty-day sentence "clearly indicate[d]" that trial court arbitrarily dismissed portion of permissible range of punishment).[5] In fact, none of the trial court's comments on which Washington

---

[5]     *See also Earley v. State*, 855 S.W.2d 260, 262–63 (Tex. App.—Corpus Christi–Edinburg 1993, pet. dism'd) (holding that trial court's statement at original plea hearing that "[i]f you foul up [on deferred adjudication], you're coming back before

11

relies relate to any punishment range the trial court intended, or did not intend, to impose.

Rather, the record as a whole reflects that the trial court carefully considered the evidence presented and arguments made by Washington's counsel, noted the inconsistencies between the evidence with respect to the identity of the shooter, but ultimately concluded that Washington's position that he was not the shooter did not carry much weight. The trial court explained more than once that Washington's involvement in this crime, as the shooter or not, did not diminish his participation or what she found to be an awareness of the severity of the situation when participating in an armed home invasion.

These comments by the trial court do not demonstrate that the trial court refused to consider mitigating evidence, but rather the weight the trial court chose to attribute to such evidence. *See Milburn v. State*, 15 S.W.3d 267, 270 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("The sentencing process consists of weighing

_____

me and I'll tell you right now I'm probably going to give you the maximum" and statement at revocation hearing that "I would rather have seen you with a first-degree [felony], because I would like to give you life" indicated that court "had decided to revoke probation and wanted to assess a life sentence before [it] heard any evidence"); *Jefferson v. State*, 803 S.W.2d 470, 471–72 (Tex. App.—Dallas 1991, pet. ref'd) (holding that trial court violated due process when, at deferred adjudication hearing, it told defendant that it would impose maximum sentence if defendant violated conditions of probation because court failed "to consider the full range of punishment for the offense charged when [it] imposed a predetermined punishment period").

mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus."). And these comments reflect the trial court's "attempt to assess a sentence proportionate to the seriousness of [Washington's] crime." *See Jaenicke*, 109 S.W.3d at 797.[6]

Finally, contrary to Washington's argument, the record demonstrates that the trial court did consider the full range of punishment. It imposed 30 years' confinement, which is at the lower end of the 5-to-99-year range for murder, a first-degree felony,[7] and less than the 50-year to life sentence sought by the State. *See, e.g.*, *Gonzalez v. State*, No. 01-14-00861-CR, 2015 WL 9310903, at *2 (Tex. App.—Houston [1st Dist.] Dec. 22, 2015, no pet.) (mem. op., not designated for publication) (noting record indicated that trial court considered full range of punishment where it imposed 16 years' confinement, which was less than 99-year maximum punishment and 25-year punishment sought by State).[8]

---

[6]  The same is true of the challenged comment by the trial court with respect to Washington's behavior at a previous hearing. The trial court noted that it observed that Washington was an hour and a half late to a previous hearing. Although the trial court explained that this fact was "not determinative of what [it] was going to do" with respect to sentencing, "the seriousness of this case is what [the trial court] wanted to make sure [Washington] understood, notwithstanding the fact that [his] position is he didn't actually do the shooting."

[7]  *See* TEX. PENAL CODE § 12.32(a).

[8]  *See also Banister v. State*, 551 S.W.3d 768, 770 (Tex. App.—Fort Worth 2017, no pet.) ("The record here indicates that the trial court *did* consider the full range of punishment because it imposed a five-year sentence, which is less than the ten-year

13

Accordingly, for all of these reasons, we hold that the record in this case does not demonstrate partiality of the trial court or that the trial court refused to consider mitigating evidence or the full range of punishment—much less demonstrate the denial of a systematic or absolute requirement. And absent a clear showing to the contrary, we must presume that the trial court was neutral and detached in assessing Washington's punishment and that it considered the full range of punishment. *See Brumit*, 206 S.W.3d at 645.

## Conclusion

We therefore affirm the trial court's judgment of conviction in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Rivas-Molloy and Gunn.

Do not publish. TEX. R. APP. P. 47.2(b).

---

maximum punishment allowed for a DWI conviction with two prior DWI convictions . . . .").