**AFFIRMED and Opinion Filed March 19, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

---

### No. 05-18-01491-CR

---

**DAVID ODEMWINGIE, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

---

### On Appeal from the 204th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. F-0701267-Q

---

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Evans
Opinion by Justice Reichek

David Odemwingie appeals his conviction for theft of property with an aggregate value of $100,000 or more, but less than $200,000. Bringing five issues, appellant contends (1) the trial court failed to function as a neutral and detached arbiter, (2) he was denied effective assistance of counsel, (3) he was denied his right to allocution, (4) his punishment was unconstitutional, and (5) his imprisonment was contrary to the objectives of the penal code. Concluding appellant's arguments are without merit, we affirm the trial court's judgment.

**Factual Background**

Appellant was indicted for the offense of theft based on a continuing course of conduct involving submitting bills to the Texas Medicaid and Healthcare Partnership for goods and services he did not provide. Pursuant to the terms of a plea bargain agreement, appellant executed a judicial confession and pleaded guilty to the offense as charged. On March 14, 2008, the trial court followed the plea bargain agreement, found appellant guilty, and sentenced him to ten years in prison, probated for a period of ten years. Among the terms of appellant's probation was the requirement that appellant pay restitution in the amount of $135,500.13 in monthly installments of not less than $1,150.

Over nine years later, in December 2017, the State moved to revoke appellant's probation alleging, among other things, that he had paid only $1070.13 in restitution while on community supervision. Appellant entered an open plea of true to the State's revocation allegations.

At the hearing on the motion to revoke, appellant's probation officer, Jennifer Shorey, testified that, although records showed appellant was unemployed for the first five years of his probation, he reported he was currently employed as an inventory specialist with Washington Inventory Service ("WIS") at a pay rate of $11 per hour. Shorey further testified that the probation office repeatedly tried to work with appellant to get him to make the required payments, but he failed to do so.

Appellant testified regarding the problems he had getting and retaining employment with his felony record. In addition, appellant stated his transportation was unreliable and he had custody of his two daughters which made working difficult. Appellant reaffirmed he was working as an inventory specialist with WIS, but said his hours varied and sometimes he would work only a few hours a week. He said it was his intention to pay the restitution, but he did not have any money stating "in 2012, I think I made $3,000 for the whole year. How can I come up with 1100 a month?" Appellant clarified stating "It's not that I totally ignore it. I knew what was on, but there's little or nothing I could do." Appellant then asked if the judge could reduce the restitution amount because he did not know how he would ever be able to pay the full amount owed.

After this testimony, the hearing was adjourned and did not resume until nine months later. In the interim, appellant made restitution payments totaling $39,261. Appellant stated he got the money from family and friends.

When the hearing reconvened, counsel for the State asked appellant again about his employment and appellant responded that he worked for WIS. The State then asked appellant whether he had an additional job working for Steadfast Group and appellant admitted that he did. The following exchange then occurred:

State:     You told the judge you only worked for one company; isn't that right?

Appellant:   Yes

State: And you told her that you didn't make very much money, and you didn't have many hours with that company; isn't that right?

Appellant: Yes.

State: You did not tell her that your primary job was through Steadfast Group, did you?

Appellant: No.

State: And that's true, that you primarily work for Steadfast Group, isn't it?

Appellant: Yes.

State: And you make significantly more money than what you relayed to the judge?

Appellant: Yes.

The State went on to question appellant about the amount of money he was making, including his income from Steadfast Group, beginning more than three years before the hearing.

On re-direct examination, appellant's counsel questioned appellant at length about his difficulties in finding work, his income, and his commitment to supporting his family. Counsel had appellant introduce his wife and children and appellant discussed how important it was to him that his daughters be able to go to college. When appellant was asked why he did not disclose the second job to the court, he responded that he did not have any reason. Appellant then stated "I have my two little girls in college. I have made a promise to myself that whatever it takes, they got to go to school."

–4–

The trial judge then directly questioned appellant about his earlier failure to reveal his second job. Appellant responded that he had no explanation for his failure to inform the court about the additional job except that it did not occur to him because he was "so full of emotion." The trial judge then stated,

> I remember all the emotion I – I do remember that, but what I cannot understand is, you're taking care of these two little girls, you're earning most of the money that you live on from some group called the Steadfast Group, and we hear absolutely nothing about that until the prosecution brings that up today. I heard a lot about your – your vehicle problems, your sporadic work, and how you didn't make any money as an inventory associate, but I didn't hear anything about this company that's paying you most of your income. How do you forget that?

Appellant again stated he could not explain, but suggested it was caused by the way he was questioned. The judge disagreed stating she had gone back and read the transcript and the questioning about his employment and income was clear. The judge ended by asking "And you forget all about the Steadfast Group? It just slipped your mind?" Appellant responded "I'm sorry, Your Honor."

The defense then called appellant's wife to testify. Charity Odemwingie stated she and appellant married in 2013. According to Charity, she and appellant struggled financially, so she went back to school to get a nursing degree and she was currently employed at a nursing home making $25 an hour. She recounted her efforts to raise the money appellant owed by calling family and friends and said most of the money they obtained was loans they would need to pay back. On cross-examination, Charity acknowledged she and appellant had purchased a house with a $10,000

–5–

down payment and they were making monthly mortgage payments of about $1,800. She also acknowledged they had each purchased used cars in the last few years.

At the close of the evidence, the trial judge asked appellant if he ever told the probation department about his job with Steadfast Group. Appellant responded that he did not recall. The judge then went through appellant's file and stated she did not "find one single instance where [appellant] notified probation that [he was] working for the Steadfast Group." She commented that "[i]t's not a crime to be poor, but it is a problem to be deceptive when you have an obligation to make." The court then accepted appellant's plea of true, granted the State's motion to revoke, and found that appellant violated the provisions of his community supervision. Punishment was set at ten years in prison. This appeal followed.

## Analysis

### I. Judicial Bias

In his first issue, appellant contends he was deprived of his right to a fair and impartial arbiter at trial. Appellant points to the trial judge's questioning of him about his failure to reveal his primary source of income to argue the judge was acting as an advocate for the State and her actions demonstrated bias requiring reversal of the punishment portion of the judgment.[1]

---

[1] It is undisputed that appellant was serving a straight probation and the proceedings at issue involved an open plea to the State's revocation motion. Accordingly, appellant concedes the trial court's alleged bias could not have impacted either appellant's initial guilty plea or his plea of true to the revocation allegations, and the only potential impact was on appellant's punishment.

We review the entire record to determine whether there has been a clear showing of bias. *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). A defendant is entitled to a fair trial before a judge with no actual bias against him or interest in the outcome of his particular case. *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). Due process requires the judge be neutral and detached. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Accordingly, a judge should not act as an advocate or adversary for any party. *Dockstader*, 233 S.W.3d at 108. A trial judge has broad discretion, however, over the conduct of the proceedings and may question a witness to obtain relevant information or clarify a point. *Wilson v. State*, 05-10-01362-CR, 2011 WL 6144919, at *2 (Tex. App.—Dallas Dec. 12, 2011, pet. ref'd) (mem. op. not designated for publication).

We note that the revocation proceeding at issue was a hearing before the court, so there are no concerns the judge's actions in some way influenced a jury. *See Wilson v. State*, No. 05-12-00831-CR, 2013 WL 4399193, at *6 (Tex. App.—Dallas Aug. 15, 2013, no pet.) (mem. op. not designated for publication). After hearing evidence, a judge may be "exceedingly ill disposed" towards the defendant, but this does not amount to bias requiring recusal "since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to the completion of the judge's task." *Litecky v. U.S.*, 510 U.S. 540, 550-51 (1994). An unfavorable

–7–

disposition towards the defendant arising from the facts adduced or events occurring at trial can only be characterized as bias if it is "so extreme as to display clear inability to render fair judgment." *Id*. at 551.

In this case, the trial judge properly questioned appellant to clarify why he had not earlier disclosed his additional job and, more importantly, his primary source of income. In determining a proper sentence, the judge must consider all relevant evidence and tailor the sentence to the particular offense and defendant. *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999); *Wilson*, 2011 WL 6144919, at *2. Appellant was given multiple opportunities to explain his actions. When appellant offered varying reasons for not revealing his second job, including the absence of proper questioning, the judge expressed skepticism based on the fact that appellant had been using his limited income from his part-time job with WIS to justify his failure to make the required restitution payments. Although the record demonstrates the trial judge was frustrated by appellant's apparent lack of candor, we cannot say her questions demonstrated a bias "so extreme as to display clear inability to render fair judgment." *See Litecky* 510 U.S. at 551. Instead, they demonstrated her consideration of appellant's efforts, or lack thereof, to comply with the terms of his probation when making her decision on punishment. We overrule appellant's first issue.

## II. Ineffective Assistance of Counsel

In his second issue, appellant contends his trial counsel's failure to question him at the hearing in January about his job with Steadfast Group allowed the State to later attack his credibility. Appellant argues that such a tactic was "indefensible" and "no valid strategy" could explain his actions. Appellant relies on the trial judge's reaction to his failure to reveal his primary source of income at the January hearing to show that his counsel's performance was ineffective and significantly prejudiced his case.

To succeed in showing ineffective assistance of counsel, an appellant must demonstrate both that his counsel's representation fell below an objective standard of reasonableness and that the allegedly deficient performance prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellant bears the burden of proving his counsel was ineffective by a preponderance of the evidence. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). A single error will not typically result in a finding of ineffective assistance. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

Claims of ineffective assistance of counsel are generally not successful on direct appeal because the record is inadequately developed for an appellate court to

fairly evaluate the merits of such a serious allegation. *Lopez*, 343 S.W.3d at 143. The court of criminal appeals has made clear that, in most cases, a silent record which provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Counsel should ordinarily be afforded the opportunity to explain his actions before being denounced as ineffective. *See Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim App. 2012). If trial counsel is not given that opportunity, then an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Appellant's complaint of ineffective assistance rests entirely on his trial counsel's failure to elicit testimony from him at the January hearing about his job with Steadfast Group. Appellant did not raise the issue of ineffective assistance in a motion for new trial and, accordingly, the record before us is silent regarding the reasons for his counsel's actions. A review of the record shows, however, that counsel's questions at the hearing in question did not limit the sources of income about which appellant could testify. His questioning addressed appellant's financial situation in general. In response to a question regarding why he had not made his restitution payments, appellant discussed only the sporadic nature of his part-time work with WIS. Appellant stated that, immediately preceding the hearing, he went weeks without working at all. When his counsel asked what he wanted the trial court

to do about the remaining restitution he owed, appellant responded, "I don't know how I'm gonna be able to pay that, but I will give [sic] try my very best to pay as much as I can. If my job situation improve[s], I will – I will pay more."

There is nothing to indicate appellant's counsel was pursuing a tactic of not questioning appellant about his sources of income. Instead, it appears appellant chose to answer his counsel's open ended questions with only information about his employment with WIS. To the extent appellant contends his counsel should have helped him develop his testimony by specifically asking him about his job at Steadfast Group, there is nothing in the record to show appellant's trial counsel knew about appellant's second job at that time.

Appellant contends that, if his counsel was unaware of his employment status, this ignorance suggests a failure to properly investigate his case. As noted by the trial court, however, appellant's case file showed he never informed anyone at the probation office about his job with Steadfast Group despite having worked there for over three years. We cannot assume appellant was any more forthcoming with his counsel. This is particularly so given appellant's focus on his job with WIS in response to his counsel's questions about his income at the hearing. There is no information to show how or when the State learned about appellant's additional job. The record provides no basis, therefore, to conclude that appellant's counsel knew or should have known about appellant's employment at the time of the January

–11–

hearing. We will not infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

After the State questioned appellant about his failure to reveal his primary source of income, appellant's counsel made many attempts to rehabilitate him by offering him an opportunity to explain his earlier testimony. In addition, counsel had appellant discuss his continuing financial struggles and his dedication to providing a future for his children. We conclude appellant has failed to rebut the strong presumption of reasonable assistance on this record and any such issues are better raised via an application for writ of habeas corpus. *See Rylander*, 101 S.W.3d at 110 (counsel's choices involving facts not in appellate record more appropriately addressed in habeas corpus proceeding). We overrule appellant's second issue.

## III. Allocution

In his third issue, appellant contends he was denied his common law right to allocution. "Allocution" refers to a trial judge affording a criminal defendant the opportunity to "present his personal plea to the Court in mitigation of punishment before sentence is imposed." *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974) (op. on reh'g). Appellant concedes the trial court asked him before he was sentenced whether there was any legal reason why his sentence should not be imposed. In doing so, the trial court afforded appellant his statutory right to allocution. *See* TEX. CODE CRIM. PROC. ANN. art. 42.07. Appellant complains only

–12–

that he was not afforded the opportunity to present a final plea for mercy and, therefore, was denied his common law right to allocution.

To complain on appeal of the denial of allocution, whether statutory or common law, a defendant must timely object. *McClintick*, 508 S.W.2d at 618; *Hall v. State*, No. 05-18-00442-CR, 2019 WL 3955772 (Tex. App.—Dallas Aug. 22, 2019, pet. ref'd) (mem. op., not designated for publication). The record in this case shows appellant made no such objection. Because appellant did not preserve this issue for review, we resolve it against him.

## IV. Cruel and Unusual Punishment

In his fourth issue, appellant contends the ten-year prison sentence imposed by the trial court was grossly disproportionate to his offense in violation of his constitutional right to protection against cruel and unusual punishment. To preserve alleged error relating to excessive punishment, a defendant must make a timely request or motion in the trial court. *Garza v. State*, No. 05–11–01626–CR, 2013 WL 1683612, at *2 (Tex. App.–Dallas Apr. 18, 2013, no pet.) (citing TEX. R. APP. P. 33.1(a)(1); *Castaneda v. State*, 135 S.W.3d 719, 723 (Tex. App.–Dallas 2003, no pet.)). Here, appellant did not complain about his sentence either at the time it was imposed or in a motion for new trial. Accordingly, we conclude any error was not preserved. *Id*.

Even if the argument had been preserved, appellant agreed to a ten-year sentence as part of his plea bargain agreement. This sentence was well within the

range of punishment for the second degree felony offense with which he was charged. *See* TEX. PENAL CODE ANN. § 12.33 (punishment range for second degree felony is 2-20 years imprisonment and fine not to exceed $10,000). As a general rule, punishment that is assessed within the statutory range is not excessive. *Kirk v. State*, 949 S.W.2d 769, 772 (Tex. App.–Dallas 1997, pet. ref'd). We overrule appellant's fourth issue.

## V. Punishment in Contradiction of Penal Code Objectives

In his final issue, appellant contends his sentence violates the objectives of the penal code because it "failed to recognize the differences in rehabilitation possibilities between appellant and other convicted criminals for whom a 10-year sentence would constitute an eminently appropriate sentence." Appellant essentially argues that, because there was no evidence to show he was a violent criminal or an habitual recidivist, and he had friends and family who were willing to cobble together funds to pay back the money he stole, the trial court abused its discretion in sentencing him to the maximum number of years in prison to which he had agreed.

We note, once again, that appellant did not object to his sentence either at the time it was imposed or in a motion for new trial. Accordingly, as with his constitutional complaint, appellant's complaint of excessive punishment under the penal code has not been preserved for review. *See Garza*, 2013 WL 1683612, at *2.

Furthermore, rehabilitation is only one of the objectives of the penal code, with two others being deterrence and punishment. *See* TEX. PENAL CODE ANN.

–14–

§ 1.02; *see also Garza*, 2013 WL 1683612, at \*2.  In this case, appellant pleaded guilty to stealing more than $100,000 through Medicare fraud.  Although he was given ten years to pay back the money he stole, appellant paid only a little over $1,000 in restitution until the State moved to revoke his probation.  The record shows that appellant never informed the probation department about his primary job despite working there for over three years and did not reveal his true income to the trial court until confronted by the State.  Given this record, we cannot conclude the trial court abused its discretion in sentencing appellant to ten years in prison.  We resolve appellant's fifth issue against him.

We affirm the trial court's judgment.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)

181491F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DAVID ODEMWINGIE, Appellant

No. 05-18-01491-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas Trial Court Cause No. F-0701267-Q. Opinion delivered by Justice Reichek. Justices Molberg and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 19, 2020