**Opinion filed September 18, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00081-CR

_____

## JESUS MEZA A/K/A JESUS MEZA HERNANDEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-23-0390-CR**

## M E M O R A N D U M   O P I N I O N

Appellant, Jesus Meza a/k/a Jesus Meza Hernandez, was indicted for the felony offense of possession with the intent to deliver a controlled substance, namely fentanyl, in an amount of four grams or more but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.1123(d) (West Supp. 2024). He entered an open plea of guilty to the charged offense, waived his right to a jury trial, and

requested that the trial court determine his punishment. After a punishment hearing, the trial court assessed Appellant's punishment at thirty-seven years' imprisonment in the Texas Department of Criminal Justice, Correctional Institutions Division, and a $10,000 fine, and sentenced him accordingly.

In a single issue, Appellant contends that he was denied due process because the trial court was biased and assessed a disproportionate and arbitrary sentence that was intended to "send a message to the federal government." We affirm.

## I. *Factual Background*

Appellant was arrested on February 6, 2023, during an undercover drug sting operation conducted by the Odessa Police Department, and a substantial amount of fentanyl and cash were seized by law enforcement. As a result, indictments were filed against Appellant in federal and state court for drug-related offenses that arose from this arrest.

Initially, Appellant was indicted in federal court for the offense of conspiracy to possess a controlled substance with the intent to distribute a quantity of a mixture or substance containing a detectable amount of fentanyl. Appellant pled guilty to this offense, and he was sentenced to thirty-seven months' imprisonment in the Federal Bureau of Prisons. Appellant was indicted in the above cause for the instant offense, which arose from related conduct that culminated in his arrest, namely, possession with the intent to deliver a controlled substance—fentanyl—in an amount of four grams or more but less than 200 grams. *Id.*; *see Gamble v. United States*, 587 U.S. 678, 681, 687–89 (2019) (under the dual-sovereignty doctrine, an accused may be prosecuted by the federal and state authorities for the same criminal conduct, and the multiple prosecutions do not run afoul of the Fifth Amendment); *see also*

2

*Atkins v. State*, No. 11-18-00056-CR, 2020 WL 1294743, at \*7 (Tex. App.—Eastland Mar. 19, 2020, pet. ref'd) (mem. op., not designated for publication).

On March 25, 2024, the day that Appellant's case was set for a jury trial, he entered his plea of guilty to the charged offense; the trial court admonished Appellant, accepted Appellant's plea, and the punishment hearing proceeded before the trial court later the same day. At the punishment hearing, the State presented three witnesses, Officer Bailey Thurman, Officer Joe Galindo, and Detective Ronny Tarango, all of whom are employed by the Odessa Police Department; it also offered nine exhibits. Appellant presented no direct evidence.

As part of the undercover drug operation, Officer Thurman testified that he arranged via an Instagram post to purchase fentanyl from Appellant. After Appellant and his codefendant attempted to flee from the agreed-upon location, Appellant was arrested and approximately fifty grams, or 444 pills, of fentanyl and a large sum of cash in Appellant's possession were seized. Officer Galindo and Detective Tarango were also present when the arrest and seizure were made.

Detective Tarango testified that fentanyl is a dangerous and lethal substance, the consumption of which has resulted in several people, the majority being children, overdosing. His investigation revealed that Appellant would use "younger kids to help distribute these pills because they had -- they had the whereabouts and the ins and outs on how to get other kids that liked doing percs or M30 pills, and it was easier to sell." During Detective Tarango's testimony, the trial court intervened and asked him about the amount of fentanyl that was currently being distributed locally, whether there had been an increase in fentanyl distribution, and, if so, when the surge in distribution began. Detective Tarango responded that the "uptake" began around

2020 or 2021, which the trial court commented rhetorically was "[a]bout the time some other administration took over?"

After the parties closed, the trial court stated that those who distributed fentanyl had "no care for human life, obviously, because they can make so much money off so little fentanyl." The trial court convicted Appellant of the charged offense, and in pronouncing Appellant's sentence, stated, "Well, all we can do is -- this Court can do is send a message to the feds and to [Appellant] and to every other fentanyl dealer. . . . ["The feds"] gave you 37 months [for trafficking fentanyl], Texas will give you 37 years."

## II. *Analysis*

In his sole issue, Appellant contends that he was denied due process because (1) the trial court exhibited judicial bias when it commented that it desired to "send a message" to the federal government when it sentenced Appellant, and (2) the sentence imposed by the trial court was arbitrary and unconstitutionally disproportionate to the charged offense.

### A. *Judicial Comments and Bias*

The judicial officer who presides over a defendant's trial must be neutral, detached, and willing to consider the evidence presented and the full range of punishment when determining a defendant's punishment. *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973)). A trial court's arbitrary refusal to do so constitutes a denial of due process. *Grado v. State*, 445 S.W.3d 736, 739 (Tex. Crim. App. 2014); *Jaenicke v. State*, 109 S.W.3d 793, 796–97 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). Thus, absent an affirmative showing to the contrary, we presume that the trial court was neutral, detached, and considered the full range of punishment in determining a

defendant's punishment. *See Brumit*, 206 S.W.3d at 645; *Jacobs v. State*, No. 11-23-00269-CR, 2025 WL 2346890, at \*4 (Tex. App.—Eastland Aug. 14, 2025, no pet. h.); *Newman v. State*, No. 11-22-00076-CR, 2024 WL 847671, at \*4 (Tex. App.—Eastland Feb. 29, 2024, no pet.) (mem. op., not designated for publication); *see also Jaenicke*, 109 S.W.3d at 796.

It is also presumed that the trial court's actions during trial were correct, and a clear showing of bias is required to overcome this presumption. *Tapia v. State*, 462 S.W.3d 29, 44 (Tex. Crim. App. 2015); *Brumit*, 206 S.W.3d at 645; *Barron v. State*, 630 S.W.3d 392, 406 (Tex. App.—Eastland 2021, pet. ref'd). Therefore, to constitute reversible error because of an alleged improper judicial comment, it must be shown that (1) some form of judicial impropriety was committed, and (2) such impropriety resulted in probable prejudice to the complaining party. *Barron*, 630 S.W.3d at 406 (citing *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd)). However, remarks made by the trial court during trial that are perceived to either disapprove or be critical of the defendant or his case typically will not support a bias or partiality challenge. *Id.* (citing *Trung The Luu v. State*, 440 S.W.3d 123, 129 (Tex. App.—Houston [14th Dist.] 2013, no pet.)).

Contrary to Appellant's contention, there is no indication in the record of judicial bias. The trial court considered all the punishment evidence presented, the range of punishment for the charged offense, and Appellant's lack of a criminal history in its sentencing determination. The record shows that Appellant is a self-admitted drug dealer who dispensed fentanyl pills, one of which could conceivably result in a person's death, and he was in possession of more than 440 of such pills when arrested. Moreover, the trial court sentenced Appellant to a term of imprisonment—thirty-seven years—that is clearly within the parameters of the

statutory range of punishment for the charged offense. HEALTH & SAFETY § 481.1123(d) (Delivery of fentanyl is punishable by imprisonment for life, or for a term that is not less than ten years or more than ninety-nine years.). As the State argues, the trial court's comment of which Appellant complains was an indication of its attempt to impose a sentence, based on the evidence presented and the applicable range of punishment, that it believed was directly proportionate to the seriousness of the charged offense; a point that the trial court noted and believed the federal government seemed to disregard in Appellant's federal court prosecution and sentencing.[1]

Relying on *United States v. Grinnell Corp.*, Appellant contends that the sentence imposed by the trial court was improperly influenced by, and its "send a message" comment stemmed from, an extrajudicial source that "result[ed] in an opinion on the merits on some basis *other than what the [trial court] learned from his participation in the case.*" 384 U.S. 563, 583 (1966) (emphasis added) (citing *Berger v. United States*, 255 U.S. 22, 31 (1921)). However, Appellant's reliance on *Grinnell Corp.* is misplaced and his argument that flows from it is unavailing. In this case, the trial court's knowledge of the disposition of Appellant's federal court prosecution, which is the primary focus of Appellant's complaint, was derived solely from the evidence that was presented to it during Appellant's trial—namely, Detective Tarango's testimony and Appellant's federal judgment of conviction.

---

[1]We recognize that in some instances, such as the matter before us, there may be a noticeable disparity in the applicable sentencing ranges between the federal statute of conviction and the attendant sentencing guidelines and the statutory punishment range as enacted by the Texas legislature for the same or similar offense. *Compare* HEALTH & SAFETY § 481.1123(d), *with* 21 U.S.C. §§ 841(b)(1)(C), 846 (providing a sentence of up to twenty years in the Bureau of Prisons for conspiracy to commit drug trafficking absent aggravating factors), *and* U.S. SENT'G GUIDELINES MANUAL § 2D1.1 (Unlawful Manufacturing, Importing, Exporting, or Trafficking (Including Possession with Intent to Commit These Offenses); Attempt or Conspiracy), Ch. 5, pt. A (Sentencing Table) (U.S. SENT'G COMM'N 2024).

Based on this record, we cannot say that the trial court's isolated, "send a message" comment either undermined the fairness of Appellant's trial or was sufficient to rebut the presumption of neutrality. As such, there was no due process violation as Appellant suggests.

B. *Disproportionate and Arbitrary Sentence*

Next, Appellant advances the bare assertion that the sentence imposed by the trial court was disproportionate to the charged offense, arbitrary, and "violates the principle of proportionality" set forth in Article 1, Section 13 of the Texas constitution. *See* TEX. CONST. art. 1, § 13. At the outset, we note that Appellant neither cites nor directs us to any case law or other binding authority to support his argument. *See* TEX. R. APP. P. 38.1.(i) (Appellant's brief must contain appropriate citations to authorities to support the contentions made.).

As a threshold matter, the State contends that Appellant waived his objection to the alleged unconstitutional disproportionality of his sentence because he failed to object to or complain about this issue in the trial court. We agree.

To preserve error for appellate review, a party must make a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. TEX. R. APP. P. 33.1(a). Therefore, to preserve a complaint that an imposed sentence is unconstitutionally disproportionate to the charged offense, as Appellant asserts, a defendant must first raise the issue in the trial court. *See Burt v. State*, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013). Here, Appellant did not assert any such objection in the trial court, either at the time his sentence was imposed or in any posttrial motion. Further, Appellant did not object on constitutional or other grounds, including the grounds that he now asserts on appeal, that the sentence imposed by the trial court was disproportionate to sentences others had received for the same or

similar offense. Therefore, his proportionality complaint presents nothing for our review. *See* TEX. R. APP. P. 33.1(a); *Vidaurri v. State*, 49 S.W.3d 880, 886 (Tex. Crim. App. 2001); *Rhoades v. State*, 934 S.W.2d 113, 119–20 (Tex. Crim. App. 1996) (the failure to raise sentencing issues in the trial court or in a motion for new trial will not preserve error for appeal); *Curry v. State*, 910 S.W.2d 490, 497 (Tex. Crim. App. 1995) (holding that sentencing issues are subject to the error preservation rule and are forfeited if not raised in the trial court); *Alvarez v. State*, 525 S.W.3d 890, 892 (Tex. App.—Eastland 2017, pet. ref'd).

Notwithstanding the waiver of Appellant's complaint, we conclude that the sentence imposed by the trial court in this case is not unconstitutionally disproportionate to the charged offense. In reviewing a trial court's sentencing determination, we note that trial courts are afforded "a great deal of discretion" in sentencing decisions. *Renfroe v. State*, 529 S.W.3d 229, 233 (Tex. App.—Eastland 2017, pet. ref'd) (quoting *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984)). Therefore, we will not disturb a trial court's decision as to the punishment assessed absent a showing of an abuse of discretion and harm. *Id.* (citing *Jackson*, 680 S.W.2d at 814).

Although Appellant challenges the imposition of the trial court's sentence under Article 1, Section 13 of the Texas constitution, we recognize that both the United States Constitution and the Texas constitution include protections against cruel, unusual, and disproportionate punishment. *See* U.S. CONST. amend. VIII; TEX. CONST. art. 1, § 13. In this regard, the Court of Criminal Appeals has held that there is no significant difference between these constitutional protections. *See* *Cantu v. State*, 939 S.W.2d 627, 645 (Tex. Crim. App. 1997).

Punishment is generally not considered to be unconstitutional if the imposed sentence falls within the charged offense's statutory range of punishment. *State v. Simpson*, 488 S.W.3d 318, 323 (Tex. Crim. App. 2016); *Sneed v. State*, 406 S.W.3d 638, 643 (Tex. App.—Eastland 2013, no pet.). However, a narrow exception to this rule exists: when the imposed sentence is grossly disproportionate to the charged offense, even if it is within the offense's statutory range of punishment. *Renfroe*, 529 S.W.3d at 233 (citing *Solem v. Helm*, 463 U.S. 277, 290–92 (1983)); *Sneed*, 406 S.W.3d at 643; *see Harmelin v. Michigan*, 501 U.S. 957, 1004–05 (1991) (Kennedy, J., concurring). Nevertheless, "[o]utside the context of capital punishment, *successful* challenges to the proportionality of particular sentences [will be] exceedingly rare." *Solem*, 463 U.S. at 289–90 (alterations in original) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).

To evaluate the proportionality of a sentence, we must first make a threshold comparison between the gravity of the charged offense and the severity of the sentence imposed. *See Simpson*, 488 S.W.3d at 322; *Renfroe*, 529 S.W.3d at 234; *Sneed*, 406 S.W.3d at 643; *see Harmelin*, 501 U.S. at 1005. When we analyze the gravity of the charged offense, we review the harm caused or threatened to the victim and the culpability of the offender. *Renfroe*, 529 S.W.3d at 234. Only if we determine that the sentence imposed is grossly disproportionate to the charged offense will we compare the imposed sentence to other sentences that were assessed in Texas for the same or similar offense. *Id.*; *Sneed*, 406 S.W.3d at 643. But, if we do not find a gross disproportionality, our analysis ends there. *See Renfroe*, 529 S.W.3d at 234 (citing *Bradfield v. State*, 42 S.W.3d 350, 353–54 (Tex. App.—Eastland 2001, pet. ref'd)).

As we have said, the punishment range for the offense that Appellant judicially confessed to committing, is either imprisonment for life or for a term of not less than ten years but no more than ninety-nine years. HEALTH & SAFETY § 481.1123(d). In this case, the punishment assessed by the trial court—thirty-seven years' imprisonment—is well within the applicable range for the charged offense; it also falls toward the lower end of the punishment range. We cannot ignore what we and the Court of Criminal Appeals have consistently held: punishment that is assessed within the statutory range prescribed by the legislature is not violative of the federal and state constitutions. *See Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) ("[A] punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal."); *Jackson v. State*, 680 S.W.2d 809, 814 (Tex. Crim. App. 1984) (It is well-settled that a sentence will not be disturbed on appeal provided the imposed sentence falls within the applicable statutory range of punishment.); *Samuel v. State*, 477 S.W.2d 611, 614 (Tex. Crim. App. 1972); *Alvarez*, 525 S.W.3d at 892–93; *Sneed*, 406 S.W.3d at 643.

Detective Tarango testified that the fentanyl possessed by and seized from Appellant is a dangerous and often, when consumed, lethal substance. People, including mostly children, who use fentanyl will commonly overdose. Moreover, according to Detective Tarango, Appellant was recruiting and using young children to "help distribute the [fentanyl.]." By all accounts, and as we have held, Appellant committed a serious offense; the gravity of his conduct was significant and its effect on the public has been, and would be, irreparable. *See, e.g.*, *Alvarez*, 525 S.W.3d at 893 (holding that a defendant who pled guilty to possession of a controlled substance, in an amount of forty-two grams of methamphetamine, with the intent to

10

deliver, committed a *serious offense*); *Sneed*, 406 S.W.3d at 643 ("[P]ossession of over six grams of cocaine with the intent to deliver is a *serious offense*.") (emphasis added).

We have thoroughly reviewed the record before us. Considering the gravity of the offense committed by Appellant and the sentence that the trial court imposed in this instance, which is on the lower end of the applicable punishment range for such an offense, we cannot say that Appellant's sentence is grossly disproportionate to the offense for which he was charged. Therefore, we conclude that the trial court did not abuse its discretion, nor did it violate Appellant's constitutional rights, when it assessed Appellant's punishment for this offense at thirty-seven years' imprisonment.[2] Accordingly, we overrule Appellant's sole issue.

III. *This Court's Ruling*

We affirm the judgment of the trial court.


W. STACY TROTTER

JUSTICE


September 18, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[2]Even if we concluded, and we do not, that Appellant's sentence is grossly disproportionate to the offense for which he confessed, Appellant presented no evidence for us to consider and compare his sentence to those received by others in other jurisdictions for the same or similar offense, such that we could evaluate and determine whether the sentence imposed by the trial court in this case is unconstitutionally disproportionate. *See Simpson*, 488 S.W.3d at 323; *Bradfield*, 42 S.W.3d at 353–54.